SANDERSON *v.* TEXARKANA.

Opinion delivered April 1, 1912.

1. TAXATION—EXTENT OF STATE'S POWER.—Unless inhibited by some constitutional provision, the Legislature has full power over all matters of taxation and the collection and disbursement of taxes, and may exercise absolute control over all revenues collected by subordinate branches of the State Government. (Page 532.)

2. MUNICIPAL CORPORATIONS—CONTROL OF STREETS.—The State, in its sovereignty over all public highways, has full power over the streets as well as over public roads; and, unless prohibited by the Constitution, the Legislature may confer on such agency as it may deem best the power of supervision and control of streets. (Page 534.)

3. HIGHWAYS—APPORTIONMENT OF HIGHWAY TAX.—In an action to compel the collector to pay into the treasury of the city of Texarkana three-fifths of the road tax collected for 1910 on property within the city as required by act May 30, 1911, *held* that such act apportioning the road tax between the city and county was not in conflict with the grant of exclusive original jurisdiction conferred by Const., art. 7, sec. 28, upon county courts in all matters relating to roads. (Page 534.)

4. STATUTES—SPECIAL LAWS CONFERRING CORPORATE POWERS—Acts 1911, p. 1003, making the city of Texarkana an agency for the expenditure of the road tax fund, is not within the prohibition of art. 12, sec. 2, Const., which forbids the enactment of special laws conferring corporate powers. (Page 535.)

5. SAME—SPECIAL LEGISLATION.—Under Const., art. 5, sec. 24, which prohibits the enactment of a special law where a general law can be made applicable, the Legislature is the sole judge to determine whether a general law can be made applicable in a particular case. (Page 536.)

6. CONSTITUTIONAL LAW—IMPAIRMENT OF OBLIGATION OF CONTRACT.—The Legislature, in the exercise of its control over revenues collected, may, without impairing the obligation of any contracts, provide that part of the road tax collected from property within a city shall be paid to the city for use on its streets. (Page 536.)

7. INJUNCTION—MINISTERIAL DUTY.—Under act May 30, 1911, directing the collector of Miller County to pay three-fifths of the road tax collected from property in the city of Texarkana to such city, the collector holds such portion of the road tax as trustee for the city, and may be enjoined from paying the whole of such tax into the county treasury. (Page 537.)

Appeal from Miller Chancery Court; *James D. Shaver,* Chancellor; affirmed.

*Wm. H. Arnold* and *Will Steel,* for appellant.

1. The act is unconstitutional because: (1) It conflicts with art. 7, § 28, Constitution, art. 23, amendment 5;

76 Ark. 22; 92 *Id.* 98. A road tax is a county tax, and county courts only have jurisdiction of such. (2) It conflicts with art 7, § 30. (3) It is in conflict with art. 12, § 2. 87 Ark. 591; 36 *Id.* 175. '(4) lt is in conflict with art. 5, § 24, prohibiting *special* laws. Kirby's Dig., § 7324 *et seq.;* 48 Ark. 384; Suth. on St. Const., § 110; 36 Ark. 517. (5) It conflicts with art. 16, § 5, on uniformity of·taxation. 97 Ark. 330; 89 *Id.* 516; 57 *Id.* 558.

2. It is invalid in so far as it undertakes to interfere with the disposition of taxes for year 1910. Art. 16, § 11; 76 Ark. 22.

3. The chancery court had no jurisdiction to enjoin. 76 Ark. 22; art. 28, § 7; Kirby's Dig., § § 7160, 7162; 47 Ark. 85; 44 *Id.* 230.

*Paul J. Cella,* City Attorney, and *Simms & Cella,* for appellee.

1. Amendment No. 5 leaves the question of the machinery for the distribution of the funds with the Legislature. Kirby's Dig., § 7351; 37 Ark. 367; 76 *Id.* 22; 29 L. R. A. 416; ·18 So. 339; Wade on Retrospective Law, 22; 99 Pac. 286; 34 Mo. 546; 69 Mo. 571.·

2. The act confers no special powers on the city. Kirby's Dig., § 5436.

3. The Legislature is the sole judge of whether a general act is applicable or not, and of the necessity of a special act. 92 Ark. 4.

4. The tax is uniform. 63 Ill. 156; 81 *Id.* 156.

5. No vested rights are affected. Wade on Retrospective Laws, 22; 25 Ill. 187; 50 Cal. 561.

6. Equity has power to enjoin an executive officer who is about to disobey ministerial duties placed on him by statute. 5 Pom. Eq. Jur. 328-9; 52 ¨Ark. 541; Perry on Trusts, vol. 2. p. 470; Bispham, Eq. (7 ed.) 33.

7. If there is any other ground upon which a decision may rest, courts refuse to consider the constitutionality of an act, and resolve all doubts in its favor. 84 Ark. 412; 85 *Id.* 12.

FRAUENTHAL, J. This is an action to enjoin the sheriff and collector of Miller County from paying into the county

treasury three-fifths of the road tax collected for the year of 1910 from the property situated within the corporate limits of the city of Texarkana, and to compel him to pay same into the treasury of that city. Under and by virtue of Amendment No. 5 to the Constitution of the State, a majority of the qualified electors of Miller County at the general election held in 1910 voted in favor of a road tax. Thereupon the county court of Miller County levied a three mills road tax upon all the taxable property of said county for the year 1910. In July, 1911, the collector filed his settlement with the county court, from which it appears that the amount of the road tax collected under said levy upon the property within the limits of the city of Texarkana was $9,122.95, all of which he was ordered by said county court to pay to the county treasurer, and was proceeding to do so when this suit was instituted. It was alleged in the complaint that this relief was sought under and by virtue of an act of the General Assembly, approved May 30, 1911, entitled: "An act to grant to the city of Texarkana, Miller County, for use on the streets of said city, three-fifths of the road tax collected on property within the corporate limits of said city, and for other purposes." To this complaint the defendant filed a demurrer upon the ground that the said act of the Legislature was unconstitutional and void, and that the chancery court was without jurisdiction to hear the cause. Without waiving the grounds of his demurrer, the defendant also filed an answer in which he alleged that in pursuance of proper authority a number of road districts had been established in Miller County, among which was road district No. 5, which embraced as a part of its territory the entire city of Texarkana; that, in anticipation of the revenues arising from the levy of said road tax, the county court had made improvements upon the public roads in said district, by which liability had been incurred and outstanding warrants issued on the county treasury, and that this work had been done, and the warrants issued, prior to the passage of the above act; that a diversion of the funds arising from said taxes from the county treasury would impair the rights of the holders of said warrants and the creditors of said road district.

The case was heard by the lower court upon the pleadings and an agreed statement of facts. This agreed statement of

facts was in substance and effect a statement of the above allegations made in the complaint and answer. The court overruled the demurrer to the complaint, and held the above act of the Legislature constitutional and binding. It found that three-fifths of the taxes collected by the defendant under the levy of said road tax for 1910 upon property situated in the city of Texarkana amounted to $5,473.77, and that he had collected of said road tax on other property situated in said road district No. 5 a sum ($7,143.23) far in excess of an amount sufficient to pay all warrants issued and indebtedness incurred for work done in said road district prior to the passage of said act. It thereupon entered a decree enjoining defendant from paying said $5,473.77 to the county treasurer and ordering it paid to the treasurer of the city.

By the act of the Legislature approved May 30, 1911, it was provided that two-fifths of the road tax collected upon property within the limits of said city of Texarkana should be appropriated for the purpose of working roads and building bridges outside of the limits of said city and applied to that purpose, according to the discretion of the county judge. The remaining three-fifths of said tax raised and collected in said city was appropriated for the exclusive purpose of building bridges and working the streets and highways within the limits of said city, and it was made the duty of the collector of Miller County to pay into the treasury of said city three-fifths of said road tax collected on the property within the limits of said city to be used by the council of said city for said purpose, and it was provided that the receipt of said city treasurer should entitle the collector to credit in his settlement with the county court for the amount so paid. By section 2 of the act it is provided that it should apply to and include the road tax collected in said city for the year 1910. (Special & Priv. Acts, 1911, p. 1003.)

It is urged that this act is in conflict with section 28 of article 7 of the State Constitution, which grants to county courts exclusive original jurisdiction in all matters relating to roads, the disbursement of moneys for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the county. But, long after the adoption of the Constitution of 1874 and the above section thereof, said

Amendment No. 5 to the Constitution was voted by the people of the State and declared adopted on January 13, 1899. By that amendment it was provided that the county court shall have the power to levy a road tax of not exceeding three mills if a majority of the qualified electors of the county shall have voted therefor at the general election preceding such levy. In that constitutional amendment, no provision is made as to what governmental agency shall receive or disburse the funds collected from such tax. It is only provided therein that such taxes, "when collected, shall be used in the respective counties for the purpose of making and repairing the public roads and bridges of the respective counties, and for no other purpose." Unless inhibited by some constitutional provision, the State Legislature has full power over all matters of taxation and the collection and disbursement of taxes, and may exercise absolute control over all revenues collected by subordinate branches of the State Government. 1 Cooley on Taxation, p. 46. The road tax is dedicated by the above constitutional amendment to the purpose of making and repairing public roads and bridges in the county, and it is therein provided that it shall be expended for no other purpose. The streets of a municipality are public roads of the county, of which the municipality is a component part. While streets do not include roads, yet roads do include streets. *Chamberlain* v. *Iowa Tel. Co.*, 119 Ia. 619; *State* v. *Mayor*, 30 Mont. 338; 28 Cyc. 832. Streets, like roads, form the great highways of the State, upon which the travel of the people is done and their property carried. The State, in its sovereignty over all public highways, has full power over the streets as well as over public roads, and, unless prohibited by the Constitution, the Legislature may confer on such agency as it may deem best the power of supervision and control over streets. By section 3 of article 12 of the Constitution, the Legislature is impowered to pass laws for the organization of towns and cities. The streets of such towns and cities are public highways dedicated to the use, not only of the people of such municipal corporations, but to the whole people of the county. One of the chief objects of its incorporation is to give to the municipality control and supervision over the streets within its limits and to charge it with the duty to keep and maintain them in a condition so that they are constantly fit for safe,

free and convenient public use. It is hardly to be supposed that it was the intention of any enactment, either of the Constitution or of the Legislature, to authorize two agencies with co-ordinate power to have control and supervision over the streets of a city when the effect might be to enable each to thwart the other and to play at cross purposes. And so the first Legislature that assembled after the adoption of the Constitution granted to municipal councils the power to lay out, open, establish, improve and keep in repair the streets within their corporate limits. Kirby's Digest, § 5456. By virtue of the constitutional provision authorizing the organization of municipal corporations by the Legislature, and the immediate legislation had thereafter, the supervision over public highways or streets within cities and towns was confided to the authorities of the municipalities, and by the constitutional provisions of section 28, article 7, and legislative enactments thereunder, the jurisdiction over highways or the roads in the county outside of municipalities was confided to the county court. Both the streets in municipalities and the highways outside of them are public roads, and any money arising from taxation expended upon the one or the other is used for the purpose of making and repairing public roads within the meaning of the provision of said Amendment No. 5. In the case of *Texarkana* v. *Edwards*, 76 Ark. 22, it was held that section 7358 of Kirby's Digest, providing that four-fifths of the road taxes collected in cities should be used upon the streets thereof, was a constitutional and valid enactment. In that case it was said: "Four-fifths of that (the road tax) collected in the city can be expended on roads or streets in the city limits, for the Legislature, which has full control over public highways, has so enacted."

But it is urged that it was also held in that case that the road tax, when collected, is a county fund, and should be paid into the county treasury, and that the expenditure thereof is under the jurisdiction of the county court. It was, however, said in that case that such ruling was made only in view of the legislative enactments and law as they then stood, and that, to avoid a conflict in jurisdiction between the county and city officers, further legislation was required. The danger of conflict of authority by confiding to two separate bodies the juris-

diction over streets within the limits of a municipality was
therein mentioned, and it was suggested that this could be
remedied by legislative enactment giving such jurisdiction to
one body, whether it should be the county court or the munici-
pal council.  It was there also held that there was nothing in
said amendment to the Constitution which prevented an
equitable distribution of the road tax fund between the county
and the municipality.  The clear intendment of the decision
in that case is that the Legislature has the power to apportion
and direct the distribution of this road tax between the county
and the municipality, and to authorize the respective distrib-
utive shares to be paid into the treasury of the county and
the treasury of the city for the purpose of being expended upon
roads and streets.  The amendment does not specify to what
jurisdiction the road tax, when collected, shall be confided.
It simply provides that the tax, when collected, shall be ex-
pended upon the roads and bridges in the county.  The streets
of the city are public roads, within the county, and the part
of the road tax apportioned by the above act of the Legislature
to the city of Texarkana was collected from property situated
within the limits of that city, and, by that act, such portion of
said tax apportioned to the city is directed to be expended
upon its streets.  The fund is, therefore, by the act directed
to be expended for the very purpose named in said amendment
to the Constitution.  In the absence of any constitutional
inhibition, the Legislature has full power, not only to apportion
said road tax between the county and the municipality, as was
directly held in the case of *Texarkana* v. *Edwards, supra,* but
also, as therein suggested, it has the power to direct whether
the municipal council or the county court shall be the agency
which shall have the jurisdiction and the right to expend
the portion of the fund apportioned to the city, when collected,
upon the streets of such municipality.  *People* v. *Power,* 25
Ill. 187; *Hannibal* v. *Marion County,* 69 Mo. 571; 37 Cyc. 1588.

It is contended that the act is invalid because it is a species
of special legislation, and in conflict with section 2 of article 12
of the Constitution prohibiting the enactment of special laws
conferring corporate powers, and also with section 24 of article 5
of the Constitution which prohibits the enactment of a special
law where a general law can be made applicable.  But we do

not think this contention is well founded. The act does not confer upon the city of Texarkana any special powers. The powers referred to in the above provision of the Constitution relate simply to the governmental powers of municipalities, their creation, mode of territorial expansion and contraction and to their classification. An enactment providing for the apportionment to it of taxes collected upon property within its limits would not confer upon it any corporate power. The money so collected might assist it in carrying out some of the objects of its organization, but it would not grant to it any corporate power not enjoyed by all municipalities of the same class. It is conceded that under the general law (Kirby's Digest, sec. 7358) the county court may expend upon streets of cities 80 per cent. of the road tax collected from property within their limits, as was held in the case of *Texarkana* v. *Edwards, supra.* In that statute the county court is only an agency named by the Legislature to expend the fund; by the act involved in this case the municipality is simply named as such agency. Nor do we think that the act is invalidated because it is in the nature of special legislation. The Constitution permits the enactment of special laws where a general law can not be made applicable. This court has repeatedly held that the Legislature is the sole judge to determine whether or not a general law can be made applicable to accomplish the purpose intended, and whether or not it is necessary to put in force a special law to secure the object desired. Cooley, Constitutional Limitations (7 ed.), 184; *Davis* v. *Gaines,* 48 Ark. 370; *Carson* v. *St. Francis Levee District,* 59 Ark. 513; *Missouri & N. Ark. Ry. Co.* v. *State,* 92 Ark. 1; *St. Louis S. W. Ry. Co.* v. *State,* 97 Ark. 473.

It is also urged that the act is invalid, in so far as it attempts to provide for the payment direct to the city treasury of any portion of the road tax collected for the year of 1910. This contention is based upon the ground that the act was not passed until May 30, 1911, and prior to its passage taxes had been collected and indebtedness had been incurred by road district No. 5, in which the city of Texarkana is situated, upon the faith of receiving these very taxes. But ample funds were collected from the road tax in this road district, other than that which was apportioned to the city of Texarkana by this act,

to pay all of such obligations incurred. No one, however, has a vested right in the tax funds collected. The obligation of no contract is impaired by the apportionment of the taxes by the Legislature. The Legislature, as we have seen, has the power to place this portion of the fund under the jurisdiction of the city of Texarkana, with authority to expend it on the streets and highways within its limits, and the Legislature therefore could control this portion of the fund after it was collected as rightfully as it could before its collection. This principle is well stated in Wade on Retroactive Law, § 22, as follows: "The State Legislature may exercise absolute control over the revenues collected by its subordinate branches unless restrained by other constitutional provisions than that inhibiting laws which impair the obligation of contracts or providing that no man's property shall be taken for public use without compensation. Therefore, the funds collected by county taxation under existing laws may be apportioned between the county and the city subsequently chartered. The law authorizing the collection of the revenue is not a contract, nor does the fund thereby accumulated become the private property of the county. It, having been collected by governmental authority for public purposes, becomes the property of the State and remains subject to disposal by the State authority for any public purpose not inconsistent with the Constitution."

There are other constitutional objections raised to the validity of this act by counsel for defendant, but we do not deem them of sufficient importance to be now noted or discussed, or that any of them is sustainable.

It is finally urged that the chancery court was without jurisdiction to hear this cause. It is contended that, if the city of Texarkana has any right to any portion of said road tax, it is but a claim against the county, and therefore should be presented to the county court. This contention is made upon the ground that the road tax is a county fund. But, as we have seen, the Legislature has full power to authorize the payment of the distributive share of the city into the city treasury. The tax is not a county fund in the sense that the entire tax belongs to the county and must be expended under the jurisdiction of the county court. The Legislature directed the payment of the portion thereof going to the city into the

city treasury. It had the power to do this, and the supervision and expenditure of this portion of the fund was not confided to the county court. And the chancery court, we think, had jurisdiction over the subject-matter of this suit. By virtue of said legislative enactment, this portion of the road tax belonged to the city of Texarkana, and the defendant, who had collected it, was but an agency for its collection for the city, and, after its collection, a trustee holding the fund for it. This trust fund he was threatening to divert from its proper channel. He was but a ministerial officer, holding the trust fund, with no discretion in the matter. In 5 Pomeroy's Equity Jurisprudence, § 328, it is said: "Where no question of discretion is involved, the officer may be proceeded against either by mandamus or injunction, according to the nature of the case. Mandamus may issue in a proper case to compel the performance of a ministerial act, and injunction may issue in a proper case to restrain an act in excess of the officer's authority." In § 329, *Ib.,* it is said: "If the act of the officer is only ministerial and not governed by any discretion, then in a proper case it may be enjoined." In *Russell* v. *Tate,* 52 Ark. 541, it was held that officers in whose hands moneys are entrusted for a city are trustees in the management and application of such funds; and that the application of these funds to a purpose other than that provided by law is a breach of such trust, which may be enjoined in equity. See also 2 Perry on Trusts, 470.

The decree of the chancellor is therefore correct, and is affirmed.