The Honorable Bob Keltner State Representative 6608 Juniper Little Rock, Arkansas 72209
Dear Representative Keltner:
This is in response to your request for clarification of Op. Att'y Gen.97-284, issued to you on October 16, 1997. In that opinion, you asked whether a county judge can spend road and bridge funds for "CATA" ("Central Arkansas Transit Authority") and "Metro Plan" dues. I set out the relevant restrictions regarding expenditure of the three mill road and bridge tax authorized at Arkansas Constitution, Amendment 61, but noted that whether the particular expenditures in question fell within the restricted purposes was ultimately a question of fact not appropriate for resolution in a legal opinion, and could best be resolved by the county civil attorney, who has access to all the relevant facts. I also noted that according to my information, there was at least at one time an interlocal agreement between the County and the City regarding "CATA."
You have taken umbrage at my failure to opine upon the legality or constitutionality of the particular expenditures, and now pose your two questions again, employing somewhat different phraseology. Those questions are as follows:
 Specific question: The County Judge has requested over 4.8 million dollars in County Road and Bridge money for a RIVER RAIL PROJECT in the city of LITTLE ROCK and NORTH LITTLE ROCK. (See Attached sheet). Can this money be spent in the cities by the county? There Is no interlocal agreement.
 Specific question: The County Judge spends about 296.000 [sic] for "CATA". The county area outside the cities gets very little or no service from CATA. The Interlocal Agreement as [sic] long since expired. Is this expenditure legal?
Although these are essentially the same questions posed in your earlier request, there seems to be a new broader question underlying both. Your concern now focuses on whether it is lawful for the county to spend its road and bridge tax funds on projects within the limits of a municipality. In my opinion, as a general matter, such expenditures are lawful. The cities are a part of the County and the County may, in its discretion, choose to spend road and bridge tax moneys within city limits. The expenditure of county road tax moneys within a city's limits is not, in and of itself, unlawful in my opinion. Again, however, whether any particular expenditure is for the constitutional purpose of "constructing and repairing public roads and bridges within the county" is a question of fact. To the extent the contemplated "river rail project" involves this purpose, it is constitutional to expend road and bridge tax moneys therefor. I am not aware of the complete range of services the county or cities receive from the funds appropriated to "CATA." If road and bridge funds levied under the authority of Amendment 61 are appropriated to this purpose, however, the expenditure is unconstitutional unless it is for the purpose of "constructing and repairing public roads and bridges."
As noted in Op. Att'y. Gen. 97-284, Amendment 61 to the Arkansas Constitution places restrictions on the expenditure of road and bridge millages. Those restrictions will not be reiterated herein. Amendment 61 was passed in 1982, but there were similar earlier constitutional provisions under which the bulk of the Arkansas case law was decided. (See, e.g., former Amendment 3). Early in this century, it appears that the various municipalities in the state were aggrieved that little or no of the county road tax was being expended within the limits of the municipalities. A series of local and special acts (which were lawful at the time) were passed to apportion or allocate percentages of the road tax levy to cities. See, e.g., Sanderson v. Texarkana, 103 Ark. 529
(1912) and Texarkana v. Edwards, 76 Ark. 23 (1905). These acts were upheld as constitutional under the precursor to Amendment 61, on the theory that cities were part of the counties in which they lie, and are entitled to a share of road tax millages. Id. In 1937, an act of general applicability was passed, which stated in pertinent part that:
 (a) Of the amount collected from the annual three mill road tax in any county in this state, the county courts shall apportion one-half (1/2), except where a greater amount is allowed by law, of the amount collected upon property within the corporate limits of any city or town for use in making and repairing the streets and bridges in the respective cities or towns.
Acts 1937, No. 153, codified at A.C.A. § 26-79-104 (1987).
This act is apparently still the one used to apportion road tax dollars, although the current constitutional amendment, Amendment 61, was passed more recently, in 1982.[1]
Assuming therefore, that this is the situation in Pulaski County (that it receives the balance of the road millages, after the cities receive their apportioned share), your question becomes whether the County may expend its portion of the road and bridge tax moneys for projects within the cities. I have found no statutory or constitutional prohibition to this action. In fact, A.C.A. § 14-14-1102(b)(1)(A)(i), in delineating the powers of the county judge, states as follows:
 OPERATION OF SYSTEM OF COUNTY ROADS, BRIDGES, AND FERRIES. (A)(i) The county judge shall be responsible for the administrative actions affecting the conduct of a plan of public roadways and bridges throughout the unincorporated area of the county, including the maintenance and construction of public roadways and bridges and roadway drainage designated as eligible for expenditure of county funds. This jurisdiction shall be exercised pursuant to law, and nothing in this section shall be construed as limiting a county in performing public roadway and bridge maintenance and construction services within the incorporated municipal boundaries where permitted and in the manner prescribed by law.
A.C.A. § 14-14-1102(b)(1)(A)(i) (Emphasis added.) See also Op. Att'y Gen. 81-143.
In my opinion, therefore, it is not unlawful for a county judge to expend county road tax moneys within the limits of a municipality. Whether the two contemplated expenditures you mention are properly for the purpose of "constructing and repairing public roads and bridges within the county," is, again, a question of fact. I mean no slight in declining to answer questions of fact. My office simply does not have the staff or authority to take evidence or determine disputed factual issues, such as the extent of the "river rail project" or what the cities and County actually receive in return for the "CATA" appropriation. The parties on opposing sides of these issues may have different views or facts to support their positions. I cannot resolve such issues. This is consistent with the practice of Attorneys General throughout the country. See, e.g. Ross,State Attorneys Generals, Powers and Responsibilities, (National Association of Attorneys General, The Bureau of National Affairs, Inc., 1990) (stating that "opinions . . . are generally restricted by statute . . . to questions of law" and are "generally . . . confined to . . . questions of law, not of fact"). Id. at 61.
As stated in Opinion 97-284, the question of whether the expenditures you detail are constitutional will ultimately require a factual determination.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] An act was passed in 1953 (Act 563) to apportion 75% of road tax moneys collected upon municipal property in Pulaski County to the municipalities. This act, however, was struck down as local or special legislation. See City of Little Rock v. Campbell, 223 Ark. 746,268 S.W.2d 386 (1954).