The Honorable Bobby Glover State Senator Post Office Box 1 Carlisle, Arkansas 72024-0001
Dear Senator Glover:
I am writing in response to your request for an opinion on the following:
 1. Does the county have jurisdiction over roads and bridges located within the city limits necessary to override local building standards with regards to roads and bridges; i.e. can the county install or replace city roads and/or bridges which do not meet the design and material specifications established by the city?
 2. Does the county have jurisdiction over roads and bridges located outside of the city limits, but within the city's five-mile planning area necessary to override local building standards with regards to roads and bridges; i.e. can the county install or replace city roads and/or bridges which do not meet the design and material specifications established by the city?
 3. To what extent can the city council dictate and monitor the county's actions in road and bridge construction under A.C.A. 14-301-101? Does this statutory authority extend beyond the city limits into the city's planning area?
 4. Does the county and city's membership and participation in Metroplan, a regional transportation authority, have any impact upon either entity's ability to place and construct significant roadway or arterial roads? What are Metroplan's abilities and authorities with respect to county or city's constitutional and statutory "roadway" rights? Can the county or city, who are members of Metroplan, establish a transportation plan independent of and different from The Metropolitan Transportation plan passed by Metroplan? If so, what plan, if either, would be recognized for federal funding, i.e. what impact would differing transportation plans have upon federal and state funding?
RESPONSE
With respect to your first question, in my opinion, a county does not have unilateral jurisdiction over streets and bridges within the city limits necessary to override the municipality's building standards with regard to streets and bridges. With respect to your second question, in my opinion a county has jurisdiction over roads and bridges in the five-mile extraterritorial planning area of a municipality through the county judge's constitutional authority to operate the system of county roads and statutory authority that may be independent of the constitutional authority. Concurrently, a municipality has "exclusive" planning jurisdiction, including promulgation of a Master Street Plan, in the five-mile extraterritorial planning area to the extent that the municipality has exercised its jurisdiction under A.C.A. §14-56-413. Whether there is a conflict in a given instance between the respective county and city authority over roads or streets in that area is a question of fact that I am unable to determine. I am also unable to determine what result a court would likely reach if such a conflict were found to exist. With respect to your third question, I refer you to the answers to Questions One and Two. With respect to your fourth question, I am unable to offer an opinion on the terms of the contract between the applicable entities. I recommend that the city or county consult local counsel regarding the terms of the Metroplan agreement.
Question One: Does the county have jurisdiction over roads andbridges located within the city limits necessary to overridelocal building standards with regards to roads and bridges; i.e.can the county install or replace city roads and/or bridges whichdo not meet the design and material specifications established bythe city?
In my opinion, a county does not have unilateral jurisdiction over roads and bridges within the city limits necessary to override municipal building standards with regard to roads and bridges because the authority of the quorum court and the county judge, with respect to planning and administering the system of county roads, respectively, is limited to the unincorporated areas of the county. Consequently, the streets and bridges within the incorporated municipalities are outside of the independent jurisdiction of the county absent an agreement between the city and county to allow the county to provide construction and maintenance services as apparently contemplated by A.C.A. §14-14-1102. Even assuming the existence of such an agreement, any deviation from the municipality's properly promulgated building standards would require a variance under existing law or a lawful change in the applicable municipal standards.
A municipality's operation of the system of streets and bridges within the municipality is governed by A.C.A. §§ 14-301-101
through -405 (1987 Supp. 2005). Specifically, A.C.A. §14-301-101(1) (1987), commends the "care, supervision, and control" of the city's streets and bridges to the city council. Concurrently, the county road plan required by A.C.A. §14-17-208(h)(1) (Supp. 2005) is authorized "for the unincorporated areas of the county." Amendment 55, § 3 of the Arkansas Constitution designates the "operat[ion of] the system of county roads" as a power of the county judge. The enabling legislation to Amendment 55 states that the powers vested in the county judge by Amendment 55 "are to be performed by [the county judge] in an executive capacity and not by order of the county court." A.C.A. § 14-14-1102(a) (Repl. 1998). Furthermore, with respect to the operation of the system of county roads, A.C.A. §14-14-1102(b)(1)(A)(i) specifically delineates the county judge's regulatory authority as extending only to the unincorporated areas of the county. See also Op. Att'y Gen. 2001-319. The Code states that this authority in the unincorporated areas includes construction and maintenance of roads and bridges "designated as eligible for expenditure of county funds." A.C.A. §14-14-1102(b)(1)(A)(i).
The final sentence of A.C.A. § 14-14-1102(b)(1)(A)(i) is somewhat ambiguous in stating that "nothing in this section shall be construed as limiting a county in performing public roadway and bridge maintenance and construction services within the incorporated municipal boundaries where permitted and in the manner prescribed by law." Id. As noted in the above paragraph, the Arkansas Code commends the control over streets within a municipality's corporate limits to a municipality and delineates the county judge's regulatory authority as extending to the unincorporated areas of the county. The ambiguity is the implication that a the last sentence of A.C.A. §14-14-1102(b)(1)(A)(i) may override the equally valid A.C.A. §14-301-101(1). When the plain language of a statute is ambiguous, or so obscure or doubtful in its meaning that reasonable minds could disagree or be uncertain as to its meaning, a court will look to determine the legislative intent of the statute and construe it so that no word is void, superfluous, or insignificant. See Hartford Fire Ins. Co. v. Sauer, Ark., S.W.3d (Jun. 17, 2004) ("Sauer"). As the Arkansas Supreme Court has recognized concerning the jurisdiction over county roads and city streets, "[i]t is hardly to be supposed that it was the intention of any enactment, either of the Constitution or of the Legislature, to authorize two agencies with co-ordinate power to have control and supervision over the streets of a city when the effect might be to enable each to thwart the other and to play at cross purposes." Sanderson v. Texarkana, 103 Ark. 529, 534,146 S.W. 105 (1912); see also Yates v. Sturgis, supra (citingSanderson, supra). Interpreting the final sentence of A.C.A. §14-14-1102(b)(1)(A)(i) to mean that the county has overriding authority to perform work on city streets and bridges without the municipality's approval would fly in the face of the interpretation proffered in Sanderson, supra, and Yates,supra, because of the grant of authority specifically to the municipality in A.C.A. § 14-301-101(1). A court will not interpret language in a statute to a nullity. Sauer, supra. The final sentence must, therefore, have meaning. Construing this statute in accord with the legislative intent divined by the Arkansas Supreme Court, it is my opinion that the final sentence of A.C.A. § 14-14-1102(b)(1)(A)(i) should be read as acknowledging and specifically retaining the potential for a county, by agreement with a municipality, to perform certain work and services within a municipality.
The language used clearly delineates the authority of the county as extending only to the unincorporated areas of the county while specifically recognizing a municipality's jurisdiction over its internal system of streets and bridges. In my opinion, without agreement or permission from the municipality, a county therefore does not have jurisdiction to independently construct or repair streets or bridges within a municipality's territorial jurisdiction.[1]
If, however, your question is actually in regard to whether a city and county could make a cooperative effort involving the county undertaking the construction or repair of streets or bridges located within the municipality's territorial limitations, it is my opinion that such agreements may be possible. A joint undertaking may be subject to the requirements of the Interlocal Cooperation Act depending on how this agreement is structured. See, e.g., A.C.A. §§ 25-20-101 through -107 (Repl. 2002 Supp. 2005). I note, however, that governmental units are subject to properly established municipal zoning and planning ordinances. Op. Att'y Gen. 2003-345. The parties must abide by these ordinances unless a variance is properly granted under existing law or a lawful change in the applicable municipal requirements is made. The established standards may not be overlooked merely because the county is an actor in this instance. Id.
Question Two: Does the county have jurisdiction over roads andbridges located outside of the city limits, but within the city'sfive-mile planning area necessary to override local buildingstandards with regards to roads and bridges; i.e. can the countyinstall or replace city roads and/or bridges which do not meetthe design and material specifications established by the city?
In my opinion, a county has jurisdiction over the roads and bridges in the five-mile extraterritorial planning jurisdiction of a municipality under the county judge's constitutional authority to operate a system of county roads and, possibly, under independent statutory authority. If, however, a municipality has exercised its "exclusive" jurisdiction under A.C.A. § 14-56-413 and promulgated a Master Street Plan, there is a potential conflict between the county and municipality. Whether an actual conflict exists between the county judge and the municipality is a question of fact that this office is neither authorized nor empowered to determine. Furthermore, I am unable to determine what result an Arkansas court would likely reach if a conflict were found to exist because it is unclear which powers of the county judge are constitutional, and thus paramount, and which, if any, are statutory, and thus possibly subordinate to the city's cited authority.
The "five-mile planning area" of a municipality is authorized by A.C.A. § 14-56-413(a)(1)(A) (Repl. 1998), which states that a municipality has "exclusive" authority over the surrounding five mile area contiguous with its corporate limits for the purposes of the Municipal Planning subchapter of the Arkansas Code, A.C.A. §§ 14-56-401 through -426 (Repl. 1998 Supp. 2005).[2]
Specifically, this includes the "exclusive" authority with regards to a Master Street Plan ("MSP") which is described as follows:
 (d)(1) MASTER STREET PLAN. The [city planning] commission may prepare and adopt a master street plan which shall designate the general location, characteristics, and functions of streets and highways.
 (2)(A) The plan shall include the general locations of streets and highways to be reserved for future public acquisition.
 (B) The plan may provide for the removal, relocation, widening, narrowing, vacating, abandonment, and change of use or extension of any public ways.
A.C.A. § 14-56-414 (Repl. 1998).[3] By definition, roads outside of a municipality but within the municipality's extraterritorial planning jurisdiction are within unincorporated areas of the county. A.C.A. § 14-56-413(a)(1)(A). Arguably, A.C.A. § 14-56-414 grants a municipality some degree of control over the roads found within the unincorporated area of a county when the city is exercising its planning jurisdiction in the extraterritorial five-mile zone and has enacted a Master Street Plan that includes this area.
The five-mile extraterritorial planning jurisdiction of a municipality is "exclusive" only to the extent that a city or municipality has exercised its authority over the area. A.C.A. § 14-56-413. One of my predecessors concluded, in the context of a municipality that had included only the immediate two miles of its contiguous extraterritorial area on its planning map, that because a municipality is presumed to be exercising its extraterritorial jurisdiction only over any area included on the planning map, the municipality was not exercising its jurisdiction in the remaining three miles of the five-mile extraterritorial area. Op. Att'y Gen. 2001-234. Significantly to my predecessor, once the municipality has filed a map covering the planning area, all plats and improvements projects are to be filed with the city clerk instead of the county clerk, though the county clerk retains the authority to review and comment on, but not approve, these plans. Id. This presumption of exclusive city authority over extraterritorial areas included on the planning map must, however, be viewed with reference to the constitutional power of the county judge over the system of county roads.
As noted above, the county judge has the express authority to administer the system of county roads in the unincorporated areas of the county. See A.C.A. § 14-14-1102(a); and Op. Att'y Gen.2001-319. The county judge retains certain discretionary authority regarding the system of county roads as well. Redingv. Wagner, 350 Ark. 322, 86 S.W.3d 386 (2002) (citing the county judge's executive authority under both Amendment 55, § 3 and A.C.A. § 14-298-120 while upholding the discretionary power of the county judge to change, alter, or relocate county roads).[4]
As one of my predecessors stated, "the constitutional and statutory power of the county judge and county court over county roads . . . may not be ignored." Op. Att'y Gen. 2001-197. The constitutional authority of the county judge to operate the system of county roads cannot be abridged by an act of the General Assembly. See Op. Att'y Gen. 2001-233; see also Op. Att'y Gen. 2001-239 at fn. 6. The county judge retains his or her constitutional authority to operate the system of county roads within the five-mile extraterritorial planning area of a municipality because the roads within this area do not stop being county roads simply by being included on the municipality's planning map.[5] If the municipality has promulgated an MSP, the city has "exclusive" jurisdiction with respect to the standards or characteristics of roads as set forth in that plan. It is possible that the county and the municipality could exercise their respective authorities without conflict within the five-mile municipal planning area. It is also possible that a conflict could arise between a municipality's authority to draft the MSP and the county judge's constitutional authority to operate the system of county roads or his or her statutory authority granted independent of amendment 55, § 3. Whether such a conflict exists between the county judge's authority and the city's authority in a particular instance is a question of fact that this office is neither authorized nor empowered to answer.
It is unclear what result a court would reach in addressing such a conflict, should one exist. The term "system of county roads" is not defined in either the Arkansas Code or Arkansas case law, nor is there anything stating exactly what it means for the county judge to "operate the system of county roads" under amendment 55, § 3 of the Arkansas Constitution. The county judge has certain statutory authority, as noted above, to open new county roads and to modify existing roads, but it is unclear whether this authority now falls within the county judge's constitutional authority to "operate the system of county roads." It could be argued that the authority of the county judge to open new roads and modify existing roads in A.C.A. §§ 14-298-101
through -125 is not part of the constitutional power to operate the system of county roads and that these powers are purely statutory authority delegated to the county judge by the General Assembly. In that case, the statutory "exclusive" jurisdiction of a city may be sufficient to trump the statutory authority of the county judge. If, however, the exact contours of such a conflict were between the constitutional authority of the county judge and the statutory authority of the municipality, the county judge would necessarily prevail. See, e.g., Yates, supra.
A court may also be persuaded that the roads in the extraterritorial planning area where a municipality is exercising its authority would remain within the jurisdiction of the county for practical reasons. If the county judge were divested of jurisdiction but the roads were not within the corporate limits of a municipality, it would be unclear whether the city or the county would be responsible for maintenance and improvements on the roads. As the Arkansas Supreme Court noted in Sanderson,supra, it is unlikely that the General Assembly would intend to grant authority over the roads to two separate entities who could work at cross purposes. I am unable to determine how a court would resolve this potential conflict. Legislative or judicial clarification is warranted.
As I noted in response to Question One, it is possible that a city and a county may reach an agreement to cooperatively perform certain improvements to various roads, streets, and bridges. See the discussion above for more information.
Question Three: To what extent can the city council dictate andmonitor the county's actions in road and bridge constructionunder A.C.A. 14-301-101? Does this statutory authority extendbeyond the city limits into the city's planning area?
As I noted above in response to Question One, a county does not have the jurisdiction necessary to override a municipal building standard inside the territorial limits of a municipality. As I noted in response to Question Two, a city may exercise "exclusive" jurisdiction over the extraterritorial planning area with regards to roads and streets as authorized in A.C.A. §14-56-413 through an MSP. Whether a county judge, with certain constitutional and statutory authority, acts in conflict with the powers of such a municipality is a question that this office cannot resolve. As I noted in my response to Question Two, supra, the exact contours of the county judge's constitutional authority are nebulous and there is no indication of what an Arkansas court is likely to do. Please refer to my responses to Questions One and Two for further explanation.
Question Four: Does the county and city's membership andparticipation in Metroplan, a regional transportation authority,have any impact upon either entity's ability to place andconstruct significant roadway or arterial roads? What areMetroplan's abilities and authorities with respect to county orcity's constitutional and statutory "roadway" rights? Can thecounty or city, who are members of Metroplan, establish atransportation plan independent of and different from TheMetropolitan Transportation plan passed by Metroplan? If so, whatplan, if either, would be recognized for federal funding, i.e.what impact would differing transportation plans have uponfederal and state funding?
Metroplan is the designated municipal planning organization for central Arkansas for certain federal programs. See Central Arkansas Regional Transportation Study Agreement of Understanding; and 49 C.F.R. 613.300. It is not, however, organized by an interlocal cooperation agreement. The four questions that you have asked relating to Metroplan involve questions of authority and power that may or may not have been contracted away by the city and/or county. I recommend that the affected city and county contact the county or city attorney regarding specific questions involving an individual county or city's relationship with Metroplan.
With respect to what powers are or are not retained by cities and counties who are members of Metroplan, I will only point out that signatories to the Agreement of Understanding agreed "that all existing MSPs, and area-wide road [plans] . . . or any such plans for improvement of transportation facilities . . . shall be consistent . . ." with the plan promulgated by Metroplan. Agreement of Understanding, supra. Furthermore, with respect to federal funding, Metroplan is the designated "Metropolitan Planning Organization" through which the federally approved metropolitan transportation plan is developed and overseen in central Arkansas. See 23 C.F.R. 450.300 through 450.326; and49 C.F.R. 613.300. Any receipt of federal funds is conditioned upon observing the federal guidelines. As noted above, this office cannot offer advice through an official Attorney General opinion on the provisions of the contract and, furthermore, I have not been provided a copy of the plan in question. Whether a city or county can deviate from the plan approved by Metroplan and what effect that would have on potential federal funding are questions of fact that this office is neither authorized nor equipped to answer. The counties and cities involved should consult with local counsel on this matter.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JMD/cyh
[1] The county court, distinct from the county judge, retains certain constitutional and statutorily delegated judicial jurisdiction over roads and bridges within a county, including those that are located within the territorial limits of a municipality. See Yates v. Sturgis, 311 Ark. 618,846 S.W.2d 633 (1993) (affirming the county court's jurisdiction to enter an order creating a private street through eminent domain to allow access to a landlocked parcel within city limits relying on the "narrow" situation where there is specific statutory authorization for the county court to use eminent domain in this manner and the lack of any alternate redress for the owner of a landlocked parcel within city limits); and Op. Att'y Gen.2001-319 (differentiating the executive regulatory authority of a county judge over county roads from the jurisdiction of the county court over roads and bridges within a county in specific situations). General supervision of the construction and operation of the county roads is an executive power as discussed above, and not an exercise of judicial power by the county court. Accordingly, as provided by A.C.A. § 14-14-1105 (Repl. 1998), the county court did not retain the powers that vested in the county judge as executive powers pursuant to Amendment 55, § 3. There is, therefore, no inherent general regulatory authority over city streets and bridges by either a county court acting in a judicial capacity or by a county judge acting in an executive capacity. The former exercises judicial rather than regulatory power over roads with the county, and the latter's authority to operate the system of county roads is restricted to the unincorporated areas of the county. See Op. Att'y Gen.2001-319.
[2] "The territorial jurisdiction of the legislative body of the city having a planning commission, for the purposes of this subchapter, shall be exclusive and shall include all land lying within five (5) miles of the corporate limits." A.C.A. §14-56-413(a)(1)(A).
[3] Furthermore, a county planning board, or a quorum court that has adopted the powers of a county planning board, A.C.A. §14-17-203 (Repl. 1998), may promulgate a county road plan. A.C.A. § 14-17-208(h)(1) (Supp. 2005). The county road plan is described as follows:
 The plan shall include, as a minimum, designation of the general location, characteristics, and functions of roads, and the general location of roads to be reserved for future public acquisition. The plan may also recommend, among other things, the removal, relocation, widening, narrowing, vacating, abandonment, change of use, or extension of any public ways[.]
Id.
[4] While the language of A.C.A. § 14-298-120 references the "county courts," I agree with one of my predecessors that such language was apparently superseded with respect to the county court when amendment 55 transferred the authority to operate the system of county roads to the county judge. Op. Att'y Gen.88-364. Accordingly, the statute should be read as referring to the county judge.
[5] Clearly, if a municipality were to annex a portion of its five-mile extraterritorial planning area, the roads within the annexed area would become city streets as they would be within the new corporate limits of the municipality. A.C.A. § 14-30-303(d) (Supp. 2005).