Jonathan Greer, Esquire Saline County Attorney Saline County Courthouse, Room 1 200 North Main Street Benton, Arkansas 72015
Dear Mr. Greer:
You have requested approval, pursuant to the Interlocal Cooperation Act (A.C.A. § 25-20-101 et seq.) (the "Act"), of a proposed interlocal agreement (the "Agreement") between Saline County, Arkansas, and the City of Bryant, Arkansas. Before addressing the terms of the Agreement, I should note that the Agreement, subject to any review for compliance with state law by you as county attorney, would appear to qualify for approval solely by the parties without my review since it does not involve a state agency. See A.C.A. § 14-14-910(e) (Repl. 1998). Nevertheless, given that you have elected to proceed under the Act, I will proceed to review your submission under that legislation, as I am obliged to do pursuant to A.C.A. § 25-20-104(f)(2) (Repl. 2002). As discussed below, I do not believe the Agreement constitutes an interlocal agreement of the sort that would be subject to my approval under the Act.
The Act provides in pertinent part:
 25-20-104. Agreements for joint or cooperative action — Authority
 (a) Any governmental powers, privileges, or authority exercised or capable of exercise by a public agency of this state alone may be exercised and enjoyed jointly with any other public agency of this state which has the same powers, privileges, or authority under the *Page 2 
 law and jointly with any public agency of any other state of the United States which has the same powers, privileges, or authority, but only to the extent that laws of the other state or of the United States permit the joint exercise or enjoyment.
 (b) Any two (2) or more public agencies may enter into agreements with one another for joint cooperative action pursuant to the provisions of this chapter. Appropriate action by ordinance, resolution, or otherwise pursuant to law of the governing bodies of the participating public agencies shall be necessary before the agreement may enter into force.
 (c) Any agreement for joint or cooperative action shall specify the following:
 (1) Its duration;
 (2) The precise organization, composition, and nature of any separate legal or administrative entity created thereby, together with the powers delegated to it, provided that the entity may be legally created;
 (3) Its purposes;
 (4) The manner of financing the joint or cooperative undertaking and of establishing and maintaining a budget therefor;
 (5) The permissible methods to be employed in accomplishing the partial or complete termination of the agreement and for disposing of property upon the partial or complete termination; and
 (6) Any other necessary and proper matters.
 (d) In the event that the agreement does not establish a separate legal entity to conduct the joint or cooperative undertaking, in addition to the items enumerated in subdivisions (c)(1) and (c)(3)-(6) of this section, the agreement shall contain the following: *Page 3 
 (1) Provisions for an administrator or a joint board responsible for administering the joint or cooperative undertaking. In the case of a joint board, public agencies party to the agreement shall be represented; and
 (2) The manner of acquiring, holding, and disposing of real and personal property used in the joint or cooperative undertaking.
 (e) No agreement made pursuant to this chapter shall relieve any public agency of any obligation or responsibility imposed upon it by law, except that, to the extent of actual and timely performance thereof by a joint board or other legal or administrative entity created by an agreement made hereunder, performance may be offered in satisfaction of the obligation or responsibility.
 (f)(1) Every agreement made under this section prior to and as a condition precedent to its entry into force shall be submitted to the Attorney General, who shall determine whether the agreement is in proper form and compatible with the laws of this state.
 (2) The Attorney General shall approve any agreement submitted to him or her under this section unless he or she shall find that it does not meet the conditions set forth in this section and shall detail, in writing addressed to the governing bodies of the public agencies concerned, the specific respects in which the proposed agreement fails to meet the requirements of law.
 (3) Failure to disapprove an agreement submitted hereunder within sixty (60) days of its submission shall constitute approval thereof.
 (g) Financing of joint projects by agreement shall be as provided by law.
 (h) In addition to other specific grants of authority as provided in the Arkansas Constitution and statutes and in addition to the formal cooperation authorized by this chapter, cities, towns, counties, and other units of government are authorized to associate and cooperate with one another on an informal basis without complying with the detailed procedure set out in this section. *Page 4 
I am required by law to review the agreement for the purpose of determining whether it is in proper form, as described above, and is otherwise compatible with the laws of the state.
Having analyzed the agreement you have submitted, I do not believe it indeed contemplates a "joint undertaking" of the sort authorized by the Act, which is not to say that the Agreement is impermissible as a simple contract or a compact pursuant to A.C.A. § 14-14-910(e). The Agreement expresses the parties' desire "to enter into an Agreement which delineates the County and City's respective authority and obligations concerning planning matters in the City's extraterritorial jurisdiction." The Agreement next acknowledges in provision 1 the city's authority "to control the subdivision of land within its adopted and recorded planning area boundary [i.e., the city's planning map] in accordance with and under the relevant Arkansas statutory provisions, including but not limited to Ark. Code Ann. §§ 14-56-401 through14-56-408 and §§ 14-56-410 through 14-56-425. With respect to this provision, I must note that a city has "exclusive" planning jurisdiction (emphasis added), including the promulgation of a Master Street Plan, in the five-mile extraterritorial planning area to the extent that the municipality has exercised its jurisdiction under A.C.A. § 14-56-413
(Repl. 1998). See the attached Op. Att'y Gen. 2006-050 (discussing the interplay of city and county authority in this regard). Cf. Sanderson v.Texarkana, 103 Ark. 529, 534, 146 S.W. 105 (1912) ("It is hardly to be supposed that it was the intention of any enactment, either of the Constitution of the Legislature, to authorize two agencies with co-ordinate power to have control and supervision over the streets of a city when the effect might be to enable each to thwart the other and to play at cross purposes.") See also Yates v. Sturgis, 312 Ark. 397, 849
S.W.2d 523 (1993) (citing Sanderson, supra). Provision 1 thus does no more than acknowledge the application of state law. Provisions 2 and 3 likewise accord in all respects with the provisions of subchapter 4 of title 14, chapter 56 of the Code.
Provision 4 of the Agreement provides:
 After review by City Department staff for compliance with all municipal codes, a copy of all applicable plats submitted to the city shall be transmitted to the Saline County Planning Board for review and comment. *Page 5 
This provision is in all respects consistent with the provisions of A.C.A. § 14-17-208(i) (Supp. 2007), which provides:
 In unincorporated areas adjoining the corporate limits of a municipality in which the authority to control the subdivision of land is vested and is being exercised in accordance with and under the provisions of §§ 14-56-401 — 14-56-408 and 14-56-410 — 14-56-425, or any amendments thereto or thereof, or other acts of a similar nature enacted by the General Assembly, the municipal authority shall have subdivision jurisdiction, but shall transmit copies of proposed plats for the areas to the county planning board and the board of directors of each affected school district for review and comment, which shall be made to the municipal authority within sixty (60) days from the time it is received by the county planning board and the board of directors of each affected school district unless further time is allowed by the municipal authority.
The first sentence of Provision 5 of the Agreement is likewise in accord with this statute, although the requirement that developers attend the review is not in the Code.
In effect, Provisions 1 through 6 do no more than address the practicalities of effecting Code provisions that assign responsibilities to the city and the county, respectively. To this extent, these provisions do not constitute a "joint undertaking" of the sort authorized in the Act, which this office has interpreted as "memorializ[ing] a cooperative agreement as contemplated by that act." Op. Att'y Gen. 2007-027. A key factor appears to be whether the agreement assigns each party any obligations or functions showing that each is an active participant in activities that each entity might exercise independently. See Op. Att'y Gen. 2006-042; compare Op. Att'y Gen. 2004-194 (acknowledging the propriety under the Act of an agreement between a city and a county to construct a track to be used by each entity, although rejecting the agreement on other grounds); Op. Att'y Gen. 2005-173 (approving an agreement between a city and a county to cooperate in the construction and operation of a justice complex to serve both entities, with the facility to be administered by a joint board consisting of the county judge and the city administrator). *Page 6 
Provision 7 of the Agreement provides:
 Developments that are within the city's extra-territorial jurisdiction of the Bryant Planning Area Boundary shall obtain approval of the subdivision's name from the Saline County Tax Assessor and names of the streets or roads within the development shall be approved by the Saline County Office of Emergency Management.
In the attached Op. Att'y Gen. 2001-319, one of my predecessors opined that in the absence of an express agreement between a city and a county that the county could name city streets for 911 purposes, the city would retain exclusive authority to name its streets. This opinion admittedly did not address the issue of naming streets located in the city's mapped extraterritorial jurisdiction. My predecessor did note the application of the Arkansas Public Safety Communications Act of 1985, now codified at A.C.A. §§ 12-10-304 and-305 (Repl. 2003), which provides that one political subdivision's "911 public safety communication's center" may be designated to serve another political subdivision through a written mutual aid agreement. In my opinion, the Agreement in this instance in all likelihood accords with the Public Safety Communications Act in assigning approval authority of subdivision street names to the county authorities charged with emergency management. I do not, however, consider this arrangement a "joint enterprise" of the sort contemplated in the Act.
Provision 8 of the Agreement provides as follows:
 If the residential development is to have private streets or roads within the development, the developer must establish an improvement district with provisions for the maintenance and repair of said streets or roads by said district.
Without addressing whether Arkansas law authorizes political subdivisions by agreement to impose such a requirement upon a developer,[1] I will simply note that the imposition of any such requirement, if permissible, would be by action of the political subdivision having jurisdiction over the subject property. As such, the requirement would not constitute a "joint undertaking" of the sort contemplated in *Page 7 
the Act. In this regard, I must note the provisions of A.C.A. §14-17-208, which provides in pertinent part:
 (i) In unincorporated areas adjoining the corporate limits of a municipality in which the authority to control the subdivision of land is vested and is being exercised in accordance with and under the provisions of §§ 14-56-401 — 14-56-408 and 14-56-410 — 14-56-425, or any amendments thereto or thereof, or other acts of a similar nature enacted by the General Assembly, the municipal authority shall have subdivision jurisdiction, but shall transmit copies of proposed plats for the areas to the county planning board and the board of directors of each affected school district for review and comment, which shall be made to the municipal authority within sixty (60) days from the time it is received by the county planning board and the board of directors of each affected school district unless further time is allowed by the municipal authority.
Provision 9 of the Agreement provides:
 In the event of differences in the developmental requirements for street design standards of the respective parties, those requirements most stringent shall be applied.
This provision appears to reflect an assumption that the city and the county might share some authority to impose "developmental requirements" within a platted area contained within the city's mapped extraterritorial jurisdiction. See note 1, supra. I find nothing objectionable in the proposition that a city might agree to impose county "street design standards" by agreement if it chooses to do so. However, I do not consider this decision a "joint undertaking" of the sort contemplated in the Act. As noted above, the city has exclusive planning jurisdiction, including the promulgation of a Master Street Plan, in the five-mile extraterritorial planning area to the extent that the municipality has exercised its jurisdiction under A.C.A. §14-56-413.[2] In my opinion, the county has no independent authority to exercise such jurisdiction in the absence of an agreement with the city. *Page 8 
Provisions 10 and 11 of the Agreement accord Saline County certain authority to "ensure the quality of street construction for all subdivisions approved in the extraterritorial areas of the Bryant Planning Area Boundary unless the County waives this authority. . . ." These provisions again strike me as no more than a grant to the county of authority it would not otherwise be authorized to exercise independently. In this respect, these provisions do not constitute a "joint undertaking of the sort contemplated in the Act.
Provision 12 of the Agreement imposes upon the city a requirement to obtain from the developer "an infrastructure construction bond . . . to ensure completion of improvements before Final Plat approval." This provision again does not entail any joint enterprise of the sort contemplated in the Act.
Provision 13 provides "as a condition of approval the Final Plat" that the developer "provide a one year Maintenance Bond, or other acceptable instrument assigned and approved by the County, made payable to the County and City. . . ." As noted above, as a matter of statutory law, approval of the final plat resides in the city, which may as a matter of contract law condition the approval upon the county's agreement thereto. However, in the absence of such an agreement, the county would lack any authority regarding plat approval, meaning that the Agreement falls outside the parameters of the Act.
Provision 14 conditions approval of the final plat upon the developer's providing a maintenance bond to the city. This provision does not implicate the county in any sense, and hence it does not raise any issue of an interlocal agreement.
Provision 15 sets forth various circumstances under which the conditions of the Agreement might be waived by mutual consent of the parties. As noted above, none of the prior conditions of the Agreement involves a governmental function that both parties might independently perform. This provision consequently does not qualify the Agreement as an interlocal agreement under the terms of the Act.
Provision 16 locates in the city's Department of Community Development and Public Works the authority to approve plans for "storm water drainage lying within the City's extraterritorial jurisdiction." This provision again does not contemplate any variety of joint enterprise as contemplated in the Act. *Page 9 
Provision 18 declares that "[t]his Agreement shall be administered by the Mayor of the City of Bryant and the Saline County Judge, or their respective duly designated representatives." I do not consider this joint "administration" of duties dictated by statute or agreement as being assigned to one or the other of the parties to the Agreement as constituting a "joint undertaking" as contemplated in the Act.
In conclusion, I must note that I do not intend any of the foregoing as a comment on the enforceability of the Agreement. My opinion amounts to no more than a conclusion that the Agreement is not one that requires my approval under the Act. In my opinion, local counsel are charged with determining whether the Agreement is consistent with Arkansas law.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The "Municipal Property Owner's Improvement District Law," codified at A.C.A. § 14-94-101 et seq. (Repl. 1998 Supp 2007), provides for the formation of a municipal improvement district upon the unanimous approval of the property owners in the proposed district.
[2] As noted above, a city has exclusive planning jurisdiction, including the promulgation of a Master Street Plan, which includes street design standards, within the five-mile extraterritorial planning area to the extent that the municipality has exercised its jurisdiction under A.C.A. § 14-56-413.