12500

MARTIN *ET AL.* v. SAYE *ET AL.*
ANDERSON v. SAME

(145 S. E., 186)

*Messrs. Dunlap & Dunlap,* and *Spencer & White,* for petitioners.

*Messrs. Marion & Finley,* and *John R. Hart,* for respondents,

September 26, 1928.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

At its 1923 session, the Legislature passed an Act (33 Stat., 881), providing for the issuance and sale of coupon

bonds by York County, not in excess of $2,000,000, for permanent highway improvements in that county, and creating a permanent road commission (hereinafter referred to as the commission) to have charge of the carrying out of the provisions of the Act. Among the highways directed to be hard-surfaced were the following:

"From York through Tirzah, Newport, Ebenezer, Rock Hill, * * * through Fort Mill to the North Carolina line. From the North Carolina line between Gastonia and Clover, through Clover, Filbert, York, McConnellsville to the Chester County line. * * * From Cherokee County line through Smyrna, Hickory Grove, Sharon to York."

In the fall of that year, the question of the issuance and sale of bonds, as provided for by the Act, was duly submitted to and approved by the voters of York County, and thereafter bonds were sold in the sum of $1,000,000, and the Commission expended this amount in the hard-surfacing of roads named in the Act.

In 1924, the Legislature passed an Act (33 Stat., 1193) known as the Pay-As-You-Go Act, providing for a state-wide connected system of hard-surface, top soil, and other dependable types of public roads, to be constructed by the State of South Carolina, and to be known as the state highway system. By the provisions of this Act, the roads designated by the Act of 1923 to be paved in York County were made a part of this system. The highways above enumerated were thus therein designated and described:

"From York easterly on route No. 5 by way of Tirzah, Newport and Old Point to Rock Hill. From Cherokee County line near Smyrna easterly on route No. 5 to York. From Chester County line near Lowrysville northerly on route No. 16 by way of McConnells, Guthriesville, York, Filbert, and Clover to the North Carolina state line near Bowling Green."

Because of constitutional limitations, it was found that the whole amount of bonds authorized by the 1923 Act could

not be issued, so later, in 1926, an amendment to the Constitution was adopted removing the limitations and thereby permitting the issuance and sale of the additional bonds.

In 1926 the Legislature passed a general reimbursement Act (34 Stat., 1001), providing for the construction of highways in the state highway system pursuant to reimbursement agreements between the state highway department and the counties and road districts of the State and for the issuance of bonds for that purpose. It also provided that if the actual cost of the work in the construction of such highways should be less than the amount estimated, the proceeds of such bonds not used to pay such cost should be placed in a special fund by the county treasurer and applied solely to the payment of the principal of bonds as such principal became due.

York County was exempted from the provisions of this Act; but in 1927 a special Act was passed (35 Stat., 1081), which, in part, brought York County within its terms. By the provisions of Section 1 of the 1927 Act, a reimbursement agreement that had been entered into between York County and the state highway department, whereby York County had agreed to advance $1,000,000 to the state highway commission for the construction of state highways in that county and the highway commission had agreed to reimburse the county for moneys so advanced, was validated and confirmed. The 1927 Act also authorized and provided for the issuance and sale of $1,000,000 of bonds, and pledged the full faith, credit, and taxing power of York County for the punctual payment of same, principal and interest. The Act further provided that any premium received on the sale of the bonds, together with interest received from banks or depositories on the $1,000,000 pending its expenditures, should first be applied to the payment of certain expenses enumerated therein, and that any part of the premium not so used, together with accrued interest paid by the purchaser of the securities, should be applied to the payment of interest on the bonds.

It was also provided that the reimbursement agreement should be carried out in accordance with the provisions of Section 3 of the 1926 Act, but that the bonds for the raising of the money to be advanced should be issued pursuant to the 1927 Act.

The Commission, acting under the 1927 statute, issued and sold bonds in the sum of $1,000,000, and, pursuant to the reimbursement agreement, turned over that amount to the state highway department, to be used to complete the roads in the state highway system designated by the Act of 1924 to be built and hard-surfaced in York County. The premium realized from the sale of the bonds amounted to $35,900 and the accrued interest paid by the purchasers of bonds to about $10,000. This money, under the terms of the Act, was placed in the hands of the county treasurer, to be used by the Commission for the purposes named therein. The treasurer also received, at various times, interest apparently aggregating about $20,000 from banks in which the $1,000,000 was deposited pending its expenditure by the state highway commission. The aggregate sum expended at various times for different items of expense enumerated in the Act of 1927 amounted to about $20,000, and there was thus left in the hands of the treasurer, as it appears, subject to the warrants of the Commission, about $45,000.

With this status prevailing, the Legislature in 1928 passed an Act (35 Stat., 2048), amendatory to the Act of 1927, providing that all unexpended balances in, or thereafter coming into, the hands of the county treasurer of York County from any source connected with the $1,000,000 bond issue might be used by the Commission for any purpose connected with hard-surface roads in the county.

It appears that the state highway department has about completed the construction of the roads to be built by it in York County under the Act of 1924, including the highways on routes 5 and 16 extending to the corporate limits of the Town of York. But between the paved highways on these

routes, terminating at the corporate limits of the town, and its paved streets are segments of unpaved roads or streets amounting to, in the aggregate, about 2 1/10 miles. After the passage of the 1928 Act, and after the town authorities of York had declined to pave these segments of roads or streets within its borders, the Commission declared its intention to do so and, under its construction of the Act, to use the balance of premium and accrued interest for that purpose.

These proceedings were then instituted by the petitioners in the original jurisdiction of the Court for permanent injunctive relief. One action is brought by taxpayers of the county and the other by a bondholder. The cases involve similar points of law and were heard together; and the Court in one opinion will dispose of the questions raised in both cases.

The first of these questions, considered in logical order, is whether or not the commission is authorized by law to hard-surface the segments of roads or streets within the corporate limits of the Town of York?

Being a creature of statute, the Commission may exercise only such authority and powers as are given it by statute. The Act creating it, that of 1923, expressly states that the Commission "shall have charge of the carrying out of the provisions of this Act." The main purpose of the Act, as shown by its terms, was to provide for the issuance and sale by York County of coupon bonds, not in excess of $2,000,000, "in such amounts and at such times as the Commission may determine" in its judgment, the proceeds to be used for the hard-surfacing in York County by the commission of certain specifically named and described highways "from," "to," or "through" certain points or places named in the Act, in the doing of which authority was granted the Commission to "relocate the roadbeds along the said highways, with due regard to distance and grade."

In the matter of condemnation and acquiring rights of way, but in no other respect, the Commission was vested with the same authority and power possessed by county boards of commissioners. As to matters of detail, the Commission was directed to build the specified highways by contract with independent contractors, to advertise for bids, and to let the contracts to the lowest responsible bidders, with the right to reject any or all bids. These provisions of the Act vested in the Commission whatever power and authority it had or may possess in the hard-surfacing of the roads named.

A careful study of the Act does not disclose that the Legislature vested, or intended to vest, the Commission with the power it now seeks to exercise. The fact that the Act does not prohibit the Commission from doing certain things, furnishes no argument that it is, therefore, as contended by the respondents, permitted to do them. As already pointed out, the powers of the Commission are derived from no source other than the statute itself. There is absolutely nothing in the Act from which the authority claimed by the Commission may be even inferred, unless it should be concluded that the use of the words "through * * * York," with respect to the construction of the highway from the Chester County line to the North Carolina line, implies legislative intent, at least so far as that highway is concerned, to vest the Commission with such authority. We do not think, however, that the use of the word "through" in this connection carries with it any such implication, and the respondents themselves do not seriously make such contention. The words *from, to,* and *through* were merely intended to be used as descriptive of the control points along the highways designated to be built. This view is supported by the language used in the 1924 Act, by which the highways directed by the 1923 Act to be hard-surfaced in York County were incorporated in the state-wide system of roads. It was there provided, with respect to this partic-

ular road, that it should extend from the Chester County line to the North Carolina line "by way of" York, thus indicating that, to the legislative mind, the terms "through" and "by way of" were of the same practical significance and served only to fix the control points along the highways.

It is also to be observed that even if the Commission ■ had been vested by the provisions of the Act with the full powers of county boards of commissioners, as it was not, it would still be without authority to enter the City of York for its declared purpose, since the authority of county boards themselves does not extend to territory within the city limits.

In 13 R. C. L., at page 168, we find:

"County authorities have no power to control city streets, except where the statute so provides. Where such control is vested in the city authorities, the power of the city over its streets is exclusive, and the general power of the county within which the city lies to control the highways within its territory, is thereby divested in so far as such streets are concerned. This is particularly true where the control of the municipality is expressly declared to be exclusive. Of course where power over streets and highways is not given to a city, or only partial power or jurisdiction is granted, the county in which it lies retains its original power with reference thereto, except so far as the power is partially conferred on the municipality in the case of a partial grant of jurisdiction. On the annexation of territory to a municipality, highways therein become city streets and subject to the control of the municipal authorities."

The case of *Farr v. Steele,* 128 S. C., 293, 121 S. E., 792, was a proceeding in mandamus to require the Lexington County board of commissioners to fix by condemnation proceedings the amount due the petitioner for certain lands belonging to her in the Town of Cayce, in that county, which had been taken by the county for a public highway running through the town. The Court held: (1) That where the

agents of a county take the land of an owner for the use of a public road without any steps to condemn it they are trespassers and the remedy is by an action at law; (2) that an Act authorizing the state highway commission to maintain streets in towns of less than a certain number of inhabitants, does not authorize it to construct such streets, nor give it the right of condemnation within such town; and (3) that the jurisdiction of county commissioners and state highway commissioners does not extend to the territory within an incorporated town, and therefore such commissioners have no right or power to open a road within a town.

It is contended, however, that the provision of the 1928 Act, directing the expenditure of "all unexpended balances" by the Commission "for any purpose connected with hard-surface roads" in York County, gives to the Commission the power claimed. This contention is equally without merit. It is evident that this provision can refer only to such roads as the York commission was authorized and empowered to hard-surface under the Act of 1923, or as the state highway commission, under the Act of 1924 or Acts amendatory thereto, might construct and hard-surface under the reimbursement agreement between it and the York commission. It has been shown that neither the York commission nor the state highway commission was authorized by statute to build or hard-surface any road or street within the corporate limits of the Town of York. The conclusion, therefore, is inescapable that the Commission has no jurisdiction or power to open up, construct, hard-surface, or maintain any road or street within the City of York, whether or not such road or street is, in effect, an extension of any highway built or hard-surfaced to the corporate limits of the town, either by itself or the state highway commission.

We shall consider next the contention of the petitioners that the Act of 1928 impairs the obligation of the contract involved in the issuance and sale of bonds by the Commission in 1927, and so violates Article

1, § 10, of the Federal Constitution, and Article 1, § 8, of the State Constitution. They argue that:

"The petitioners taxpayers, and in particular the petitioner, J. W. Anderson, as the holder of one of the bonds of York County issued by the respondents in the year 1927, submit that the Act of 1928 and the procedure of the respondents in expending the funds in their hands for paying in the Town of York, constitutes a diversion of these funds from the purpose for which they were appropriated, and to that extent impairs the obligations of the contract involved in the issuance of those bonds."

In answer, the respondents say that the petitioners have no just nor legal right of complaint, as the full faith, credit, and taxing power of York County are pledged for payment of the bonds, principal and interest, and that a tax is primarily laid on the property of the county for that purpose; that the bondholder would get what he contracted for, namely, interest on his money and the principal, and that, the obligation to pay not being lessened, the contract is not impaired.

Section 1 of the Act of 1927 provides as follows:

"The reimbursement agreement dated March 2, 1927, heretofore entered into by and between York County and the State Highway Commission of South Carolina, whereby York County (acting by the York County Permanent Road Commission) has agreed to advance One Million ($1,-000,000.00) Dollars to the State Highway Commission for the construction of State Highways in York County, and whereby the State Highway Commission has agreed to reimburse York County for the moneys so advanced, is hereby validated and confirmed, and the said agreement shall be carried out in accordance with the provisions of Section 3 of Act No. 559, of the Acts of 1926, except, that the bonds to be issued for the purpose of raising the moneys to be so advanced shall be issued pursuant to this Act, instead of pursuant to said Act No. 559 of the Acts of 1926."

Section 4 of this Act also provides in part:

"Any premium received upon the sale of the bonds, together with any interest received by the State Highway Department from any depository, or depositories, of said principal sum of One Million ($1,000,000.00) Dollars, pending its expenditure for the construction of said roads, shall be paid over to the Permanent Road Commission of York County and may be used by the Road Commission for the payment of expenses incurred in issuing the bonds, including expenses of advertising the sale, printing the bonds, procuring the opinion and assistance of attorneys, and similar expenses, or for the purpose of acquiring rights of way necessary for the construction of the highways for which the bonds are issued. Any part of the premium not so used, together with all accrued interest paid by the purchaser of the bonds, shall be applied to the payment of interest on the bonds."

The provision of the 1927 Act, requiring that the reimbursement agreement between the York commission and the state highway commission should be carried out in accordance with the provisions of Section 3 of the 1926 Act, incorporated, to that extent, such Section in the 1927 Act. This Section of the 1926 Act authorizes the counties or road districts to issue bonds for any amount not exceeding the cost of construction of hard-surface highways as estimated by the state highway department, and also provides that:

"If the actual cost of said work shall be less than the amount so estimated the proceeds of said bonds not used to pay said cost shall be placed in a special fund by the County Treasurer and applied solely to the payment of the principal of said bonds as said principal becomes due."

The following is the provision of the Act of 1928 contended to constitute an impairment of the obligation of the contract:

"Provided, further, That all unexpended balance now in the hands of the County Treasurer of York County or hereafter coming into his hands from any source in connection with the One Million Dollars bond issue in the said County may be used by the Permanent Road Commission for any purpose connected with hard-surface roads in said County."

Whatever may be said as to the provision of Section 3 of the 1926 Act relative to the application of unused proceeds of the bonds, it is clear that the provisions of the Act of 1927 became a part of the contract between the county and the purchaser and holders of the bonds, under which any portion of the premium and unexpended interest paid by the purchaser should be applied to the payment of interest on the bonds.

The enactment of any law impairing the obligation of a contract is forbidden by the provisions referred to of both the Federal and State Constitutions. In Black on Constitutional Law, at page 524, quoted with approval in *Smith v. Jennings*, 67 S. C., 324, 45 S. E., 821, we find:

" 'The obligation of a contract is that duty of performing the contract according to its terms and intent which the law recognizes and enforces.' 'Any law which precludes a recovery for a breach of contract, or excuses one of the parties from performing it, or renders it invalid, or enlarges or abridges the intention of the parties, or postpones or accelerates the time of performance, or interposes such obstacles to its enforcement as practically to annul it, impairs its obligation and is void.' "

In the same case we find the following extracts from decisions of the United States Supreme Court:

" 'The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made; these are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by the one party and the

right acquired by the other. There can be no other standard by which to ascertain the extent of either, than that which the terms of the contract indicate, according to their settled legal meaning; when it becomes consummated, the law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other a right to enforce the performance by the remedies then in force. If any subsequent law affect to diminish the duty or to impair the right, it necessarily bears on the obligation of the contract in favor of one party, to the injury of the other; hence any law, which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act on the remedy, is directly obnoxious to the provisions of the Constitution.' *McCracken v. Hayward,* 2 How., 612 [11 L. Ed., 397]. 'The objection to a law, on the ground of its impairing the obligation of a contract, can never depend upon the extent of the change which the law effects in it. *Any deviation* from its terms, by postponing or accelerating the performance which it prescribes, imposing conditions not expressed in the contract, or dispensing with the performance of those which are, *however minute or apparently immaterial in their effect upon the contract of the parties,* impairs its obligation.' *Green v. Biddle,* 8 Wheat., at page 84 [5 L. Ed., 547]. 'One of the tests that a contract has been impaired is, that its value has, by legislation, been diminished. It is not, by the Constitution, to be impaired *at all.* This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation, dispensing with any part of its force.' *Planters' [Planter's] Bank v. Sharpe [Sharp],* 6 How., 301, at page 327 [12 L. Ed., 447]. 'The obligation of a contract includes *everything* within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence. Without it, the contract, as such, in the view of the law, ceases to be, and falls into the class of those "imperfect obligations," as they are termed,

which depend for their fulfillment upon the will and conscience upon whom they rest. The ideas of right and remedy are inseparable. Want of right and want of remedy are the same thing. 1 Bac. Abr., tit. Actions in General, letter B.' *Edwards v. Kearzey,* 96 U. S., 595, at page 600 [24 L. Ed., 793]. 'The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced—by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means, impairs the obligation.' *Louisiana v. New Orleans,* 102 U. S., 203, at pages 206–7 [26 L. Ed., 132]."

Read in the light of these principles,. we are satisfied that the Act of 1928 impairs the obligation of the contract made between the county and the purchaser and holders of the bonds. It is clear that the fund derived from the premium received on the bonds and the interest paid by purchasers of the bonds is part of the security guaranteed to the bondholders by the terms of the Act; and even though the full faith, credit and taxing power of York County are pledged as security for the payment of the bonds, the taking away of any portion of the pledged security, however small, amounts to a denial and deprivation of a right accruing to the bondholders under the contract. The bonds were issued, not under the 1923 Act or the general reimbursement Act of 1926, but under the special Act of 1927. It seems a reasonable conclusion that the decision to issue bonds under the 1927 Act rather than under the other Acts was arrived at because it was thought that sale under the 1927 Act would be more advantageous on account of the ample security offered thereby; and it may be that because of this security a better price was obtained for the bonds. In any event, as held by the United States Supreme Court (*Green v. Biddle,* 8 Wheat., 1, 5 L. Ed., 547), the final arbiter of questions of this kind, *"any deviation* from its terms, by  \*  \*  \*  imposing conditions not expressed in the contract, or dispensing with the performance of those which are, *however mi-*

*nute, or apparently immaterial, in their effect upon the contract of the parties,* impairs its obligation."

The purchasers had a right to rely upon all the provisions of the Act, including those fixing and pledging the security for payment of the bonds, as being part of the contract of sale; and when the Legislature, by the Act of 1928, undertook to divest the holders of the bonds of a vested right accruing under the contract, it exceeded its constitutional power, and such Act is invalid because of its impairment of the obligation of the contract.

Having reached this conclusion, we do not deem it necessary to consider the other questions raised by the petitioners.

The judgment of this Court is that the permanent injunction prayed for be granted.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE and CARTER concur.