16649

LEONARD v. TALBERT *ET AL.*
(71 S. E. (2d) 603)

*Messrs. Wm. Pope Cook* and *F. Ehrlich Thomson,* of Columbia, *for Appellant,*

*Messrs. Frank A. Graham, Jr.,* of Columbia, and *Sinkler, Gibbs & Simons,* of Charleston, *for Respondents,*

July 16, 1952.

OXNER, Justice.

Broadly stated, the following question is presented: Is the General Assembly empowered to authorize a county to levy a tax or issue bonds for the improvement of a street within the corporate limits of a municipality, where such street, when improved, will constitute an integral part of the county road system and form an important connecting link with state highways? It is conceded that the General Assembly has plenary power to do so unless restrained by the limitations contained in Article 10, Section 6, of the Constitution, the pertinent portion of which is as follows:

"The General Assembly shall not have power to authorize any county * * * to levy a tax or issue bonds for any purpose except * * * to build and repair public roads, buildings and bridges * * * and for ordinary County purposes * * *."

By act approved March 3, 1952, 47 St. at L. 2790, the General Assembly authorized the County Board of Commissioners for Richland County to issue general obligation bonds in an amount not exceeding $400,000.00, the proceeds of which were to be used (1) in paying an obligation incurred in purchasing equipment for building and repairing roads, and (2) in constructing an underpass at Harden Street in the City of Columbia. The act further provided, Section 7:

"Any amount of the funds herein provided for which may be allocated for the construction of an underpass on Harden Street shall be turned over to the State Highway Department and the State Highway Department shall let the contract for the construction thereof. The State Highway Department and Richland County are hereby authorized to enter into a reimbursement agreement for the Highway Department to reimburse and repay Richland County the principal amount, without interest, of funds turned over to the said department, reimbursement to be made over a period of years, and subject to such conditions, as may be mutually agreed upon between Richland County and the State Highway Department. Providing that any and all funds received from the State Highway under a reimbursement agreement as a refund under this section shall be used to pay all or any of the bonds under this act outstanding at such time as a refund may be made to Richland County."

Pursuant to the above act, the County Board of Commissioners heretofore authorized the issuance of bonds in the sum of $114,000.00 to discharge the obligation mentioned in said act, and by appropriate resolution now propose to authorize the issuance of bonds in the further sum of $286,000.00 to provide for the construction of an underpass under the right of way of the Southern Railroad at Harden Street (extended), in the corporate limits of the City of Columbia. The underpass, if constructed, will form an integral part of a thoroughfare, which will pass through the lands of the State Hospital and will extend Harden Street to Colonial Drive, in the incorporated town of Eau Claire, where it will connect with U. S. Highways 21 and 321. If the foregoing thoroughfare were not being built, there would be no need for the underpass.

It appears that the foregoing project has been under contemplation for some time. No objection is being made by the corporate authorities of the City of Columbia or by the State Highway Department. The Board of Regents of

the State Hospital has been authorized by appropriate legislation to grant a right of way across the hospital property for this purpose. See Act. No. 1372 of the 1950 Acts, 46 St. at L. 3477.

The sole question before us for decision is whether the proposed expenditure can be justified under the provisions of Section 6, Article 10 of the Constitution. The court below concluded "that a main thoroughfare, such as the one in which the underpass here is to be constructed, must be regarded to be a public road, for which county expenditures can be made, without violating the provisions of Section 6, of Article 10."

It is well settled that the power of the General Assembly to authorize a county or township to levy taxes or issue bonds is restricted by Section 6, Article 10, of the Constitution to certain purposes therein enumerated. *Parrott v. Gourdin,* 205 S. C. 364, 32 S. E. (2d) 14; *Powell v. Thomas,* 214 S. C. 376, 52 S. E. (2d) 782.

Before entering into a discussion of the question before us, it may be helpful to refer to cerain general principles relating to the control and management of streets and highways. "Subject to constitutional limitations, the state has absolute control of the highways, including streets, within its borders, even though the fee is in the municipality. Such power of supervision and control may be exercised directly by the legislature or may be delegated by it to subordinate or local governmental agencies, such as municipalities and *quasi* municipalities, * * * and any such delegation may be revoked or changed at will." 25 Am. Jur., Highways, Section 254. Ordinarily, county authorities have no power to control streets within municipalities, except where the statute so provides. *Martin v. Saye,* 147 S. C. 433, 145 S. E. 186. In this State, as in most States, there are statutes vesting such control in the corporate authorities of cities and incorporated towns. The usual effect of such statutes is to transfer from the county authorities to the municipality the

power to regulate and control highways located therein. *Chapman v. Greenville Chamber of Commerce,* 127 S. C. 173, 120 S. E. 584, 587. It was there stated: "The right of control thus vested in the city, however, is derived from the Legislature, which represents the public at large, and has 'paramount authority over all public ways and public places.'" After all, "'a "municipal corporation, in the exercise of all its duties, including those most strictly local or internal, is but a department of the state."'" *Lillard v. Melton,* 103 S. C. 10, 87 S. E. 421, 428.

In 1864 the General Assembly enacted the following statute which is now codified as Section 5855 of the 1942 Code:

"In the event the corporators of any incorporated town or village in this State * * * refuse or neglect to carry out, in good faith, the obligations imposed by their act of incorporation, in regard to roads or streets, the county commissioners in whose county such town or village, or other incorporated body, shall be located, shall be authorized and required to take charge of all such roads and streets * * * as they are authorized to do within their counties generally."

In the light of the foregoing background, we now turn to the concrete question of whether the expenditure under consideration may be justified under the power of the General Assembly to authorize a county to levy a tax or issue bonds "to build and repair public roads". "The term 'road' has no fixed meaning in the law, and the scope to be given to it depends on the context in which it appears, and on the intent and purpose of the statute in which it appear". 39 C. J. S., Highways, § 1, page 917. As used in Article 10, Section 6 of our Constitution, we think it includes such municipal streets as from an integral part of the county highways and are used by the people of the county at large or a substantial portion thereof. Stated differently, it includes such streets as subserve both a county and a municipal purpose. The decision of this case does

not require us to adopt any broader construction. Accordingly, we leave undecided the question of whether the phrase "public roads" should also be construed as including ways and streets serving purely a local convenience and having no connection with the county highways. Some courts recognize such a distinction. *Skinner v. Henderson,* 26 Fla. 121, 7 So. 464, 8 L. R. A. 55. *Cf. Commissioners of Duval County v. City of Jacksonville,* 36 Fla. 196, 18 So. 339, 29 L. R. A. 416.

It would be a narrow and strained construction to hold that "public roads" as used in Article 10, Section 6, contemplated only thoroughfares outside the corporate limits of towns and cities. When the Constitution was adopted, the statute of 1864 heretofore set out, authorizing county commissioners under certain stated circumstances to take charge of roads and streets within incorporated towns and villages, had long been in effect. How could this be done if the framers of the Constitution did not contemplate the use of county funds for this purpose? Further support for this view is found in the practice uniformly followed in this State of levying taxes for the construction, upkeep and repair of roads on a county wide basis. All taxable property of a county is subject to taxation for the payment of county bonds. Was it intended that property owners in a municipality should be required to contribute to the construction and upkeep of roads in rural communities but that rural taxpayers may not under any circumstances be required to contribute to the construction and improvement of thoroughfares in cities and towns? If that construction were adopted, it would frequently result in much inequality in the burden of taxation. In this connection, it is worthy of observation that the assessed value of the property in the City of Columbia constitutes well over half of the taxable value of the property in Richland County.

The purpose of building roads within a county is to afford a means of travel to all its principal points. Such a purpose

cannot be accomplished if gaps are left within municipalities. Of what use is a road to the corporate limits of a county seat if there are no means of travel within the municipality to the public buildings and market places? Consideration was given to this aspect of the matter in *Poulnot v. Cantwell,* 129 S. C. 171, 123 S. E. 651, 654, where the Court upheld the issuance of county bonds for the purchase and construction of wharves, landings, etc., and for the operation of a ferry. One terminus of the ferry was in the City of Charleston. The Court there said:

"Obviously, the physical geography of a county, whose territory is traversed or surrounded by rivers or divided and separated by bodies of water, might be such as to render the expenditure of money for roads and bridges partially or wholly ineffective, if no provision could be made for ferries either as a part of the county's system of roads or as a part of the 'ordinary' expenses of the county having a clear and legitimate relation to the public welfare."

It would not be appropriate for us to enter into a discussion of the contribution, if any, which should be made by the State or the counties to the improvement of streets within municipalities. It is not within the province of this Court to undertake to balance the equities between the State, counties and municipalities with respect to the proportion each should bear in the construction and improvement of public highways. These are considerations for the legislative branch of the government. We are only concerned here with the power of the General Assembly and not the manner in which it should be exercised.

We might also state that the fact that a street project is sponsored jointly by the State and several of its governmental subdivisions presents no constitutional difficulty. *Smith v. Robertson,* 210 S. C. 99, 41 S. E. (2d) 631. It should be added that we are not now called upon to determine which unit of government has paramount authority where this is done. In the instant case neither the

State nor the City of Columbia is objecting and no question of conflict of jurisdiction is presented.

For the foregoing reasons, we think the expenditure under consideration may be justified under the power of the General Assembly to authorize a county to levy a tax or issue bonds "to build and repair public roads." The following cases from other jurisdictions tend to sustain this conclusion. *Commissioners of Duval County v. City of Jacksonville, supra,* 36 Fla. 196, 18 So. 339, 29 L. R. A. 416; *Sanderson, County Collector v. City of Texarkana,* 103 Ark. 529, 146 S. W. 105; *Hughes v. County Commissioners Court of Harris County,* Tex. Civ. App., 35 S. W. (2d) 818; *City of Breckenridge v. Stephens County,* 120 Tex. 318, 40 S. W. (2d) 43.

In *Commissioners of Duval County v. City of Jacksonville, supra,* the Court said [36 Fla. 196, 18 So. 343]:

"It is true that there may be a distinctively municipal purpose, as distinguished from county purpose, and, in our judgment, the constitution of the state recognizes sucs distinction, but in reference to the laying out and maintenance of public streets, or municipal highways, over which not only the people of the municipality, but of the entire county, can travel, it cannot be said, we think, that they are so distinctively and exclusively a municipal purpose as to render it impossible for the legislature to authorize the counties to devote revenue raised by county taxation for public roads on the property situated within the municipalities to the maintenance of the public streets therein."

In *Sanderson v. City of Texarkana, supra,* it is stated [103 Ark. 529, 146 S. W. 107]:

"The streets of a municipality are public roads of the county of which the municipality is a component part. While streets do not include roads, yet roads do include streets. * * * Streets, like roads, form the great highways of the state, upon which the travel of the people is done and their property carried. The state, in its sovereignty over

all public highways, has full power over the streets as well as over public roads, and, unless prohibited by the Constitution, the Legislature may confer on such agency as it may deem best the power of supervision and control over streets." ·

It was held in *City of Breckenridge v. Stephens County, supra* [120 Tex. 318, 40 S. W. (2d) 44]:

"If a street of an incorporated town or city forms a connecting link in the county road or state highway, we think it is a county road within the meaning of the statutes to the extent that county funds may be spent for the improvement thereof."

The Supreme Court of Georgia, in construing a section of the Constitution of that State strikingly similar to Article 10, Section 6 of our Constitution, concluded that county funds could not be used to improve municipal streets. *Mitchel County v. Cochran,* 162 Ga. 810, 134 S. E. 768. A like conclusion has been reached in Alabama. *Board of Revenue of Jefferson County v. State ex rel. City of Birmingham,* 172 Ala. 138, 54 So. 757; *Town of Clanton v. Chilton County,* 205 Ala. 103, 87 So. 345. But we are satisfied that the construction which we have adopted is more in accord with the true intention of the framers of our Constitution.

We have not overlooked *Farr v. Steele,* 128 S. C. 293, 121 S. E. 792, in which it was held that the jurisdiction of the County Commissioners of Lexington County did not extend to territory within an incorporated town, and *Martin v. Saye, supra,* 147 S. C. 433, 145 S. E. 186, holding that the Road Commission of York County was not empowered to hard surface roads or streets within the corporate limits of the town of York. These cases have no bearing on the question before us. They involved the construction of statutes. We are not here dealing with the question of legislative intent but of legislative power. ·

The order appealed from is affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.