804 S.E.2d 854

**SOUTH CAROLINA PUBLIC INTEREST FOUNDATION and Edward D. Sloan, individually, and on behalf of all others similarly situated, Petitioners,**

v.

**SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION and John V. Walsh, Deputy Secretary of Transportation for Engineering, Respondents.**

Appellate Case No. 2015-001175
Opinion No. 27738

Supreme Court of South Carolina.

Heard January 12, 2016
Filed September 14, 2017

James G. Carpenter and Jennifer J. Miller, both of Greenville, for Petitioners.

Beacham O. Brooker, Jr., of SC Department of Transportation, of Columbia, for Respondents.

CHIEF JUSTICE BEATTY:

South Carolina Public Interest Foundation and Edward D. Sloan,[1] individually and on behalf of all others similarly situated ("Petitioners"), filed this declaratory judgment action against the South Carolina Department of Transportation ("SCDOT") and John V. Walsh, Deputy Secretary of Trans-

---

1. Sloan is a citizen, resident, taxpayer, and registered elector of South Carolina.

portation for Engineering of SCDOT ("Respondents"). Petitioners sought a declaration that SCDOT's inspection of three privately owned bridges violated sections 5 and 11 of article X of the South Carolina Constitution,[2] which Petitioners assert prohibit the expenditure of public funds for a private purpose. The trial court granted Respondents' motion for summary judgment, finding: Petitioners lacked standing; the controversy was moot and did not fall under any of the exceptions to the mootness doctrine; and Respondents' actions were not *ultra vires* or unconstitutional. The Court of Appeals affirmed. *S.C. Pub. Interest Found. v. S.C. Dep't of Transp.*, 412 S.C. 18, 770 S.E.2d 399 (Ct. App. 2015). This Court granted Petitioners' request for a writ of certiorari. We reverse.

## I. Factual and Procedural History

Aiken City Councilman Reggie Ebner is a resident of Woodside Plantation, a gated subdivision in the City of Aiken. In September of 2010, Ebner emailed then-State Representative Tom Young asking for guidance on "who is responsible for the design approval, construction inspection, safety requirements and final approval for bridges in the City of Aiken." In July of 2011, Young forwarded an email from his "constituent Reggie Ebner" to Walsh at SCDOT. In the email, Ebner requested SCDOT inspect three wooden bridges located within Woodside Plantation, which he alleged had engineering and construction flaws. Ebner signed the email "Reggie Ebner, City of Aiken Councilman for District 4." After receiving the email, SCDOT conducted an inspection of the three bridges and issued a report on its findings.[3] SCDOT estimated the cost of the inspection was $1,400.

Following the inspection, the Office of the Chief Internal Auditor ("OCIA") for the Commission on the Department of Transportation investigated the propriety of Respondents' actions. In a report to former Secretary of Transportation Robert St. Onge, OCIA made several findings, including:

---

2. S.C. Const. art. X, §§ 5, 11.

3. SCDOT determined the bridges "are in good condition with just some minor problems."

(1) The bridges are neither part of the State highway system nor are they owned or maintained by the City of Aiken;

(2) The request to inspect the bridges came from a city councilman, not from the City of Aiken;

(3) Prior to the inspection, SCDOT personnel made a direct inquiry to the City of Aiken and verified that the bridges were private property;

(4) SCDOT's employees warned Chief Engineer for Operations Clem Watson that it was against SCDOT's policy to inspect privately owned bridges;

(5) SCDOT had no obligation to inspect the bridges; and

(6) Walsh and Watson maintained their actions fell within a "grey area" of the law.

Petitioners subsequently filed this declaratory judgment action seeking a declaration that SCDOT's inspection of the privately owned bridges contravened the constitutional requirement that the expenditure of public funds serve a public purpose. After both parties moved for summary judgment, the trial court concluded: Petitioners lacked standing; the issue was moot; and no exceptions to the mootness doctrine applied. Nevertheless, the trial court proceeded to address the merits of the issue and determined the inspection was not unconstitutional because it did not solely benefit the homeowners in Woodside Plantation, but was for the health, safety, and welfare of the public at large. The trial court also found the inspection was not *ultra vires* because "the inspection of the bridges was legitimately within the City's police power and the decision by Walsh to assist it was well within the Department's enumerated powers to assist other governmental entities in areas of its expertise" under section 57-3-110 of the South Carolina Code.[4]

The Court of Appeals affirmed, concluding Petitioners did not have standing and the action did not fall under any exception to the mootness doctrine. *S.C. Pub. Interest Found.*, 412 S.C. at 24-28, 770 S.E.2d at 402-04. The Court of Appeals

---

4. *See* S.C. Code Ann. § 57-3-110 (2006) (providing SCDOT may, upon request, assist government authorities in supervising the construction of roads and bridges under certain circumstances).

based its conclusion solely on its belief that SCDOT "conducted its own audit and concluded its own actions were improper." *Id.* at 24, 770 S.E.2d at 402. The Court of Appeals declined to reach the issues of whether Respondents' conduct was *ultra vires* or unconstitutional based on its disposition of the justiciability issues. *Id.* at 28, 770 S.E.2d at 404. This Court granted certiorari to review the decision of the Court of Appeals.

## II. Standard of Review

When reviewing a grant of summary judgment, appellate courts apply the same standard that governs the trial court under Rule 56(c), SCRCP, which provides that summary judgment is proper when there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 653, 661 S.E.2d 791, 796 (2008); Rule 56(c), SCRCP. This Court reviews all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Willis v. Wu*, 362 S.C. 146, 151, 607 S.E.2d 63, 65 (2004).

## III. Discussion

### A. Whether Petitioners have standing to bring their claim.

"A plaintiff must have standing to institute an action." *Sloan v. Greenville Cnty.*, 356 S.C. 531, 547, 590 S.E.2d 338, 347 (Ct. App. 2003). Standing is "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." *Black's Law Dictionary* 1625 (10th ed. 2014). We recognize three types of standing: (1) standing conferred by statute; (2) "constitutional standing"; and (3) public importance standing. *ATC S., Inc. v. Charleston Cnty.*, 380 S.C. 191, 195, 669 S.E.2d 337, 339 (2008). Petitioners assert they have constitutional standing as taxpayers and public importance standing.

### 1. Constitutional Standing

A party has constitutional standing if he can show: (1) he suffered an invasion of a legally protected interest, which is concrete and particularized, and actual or imminent;

(2) a causal connection between the injury and the challenged conduct; and (3) it is likely the injury will be redressed by a favorable decision. *Youngblood v. S.C. Dep't. of Soc. Servs.*, 402 S.C. 311, 317-18, 741 S.E.2d 515, 518 (2013). Here, Petitioners are unable to show they suffered a concrete and particularized injury distinct from that shared by other taxpayers; therefore, we find Petitioners do not have constitutional standing. *See Freemantle v. Preston*, 398 S.C. 186, 193, 728 S.E.2d 40, 44 (2012) (recognizing that a taxpayer's injuries are "common to all citizens and taxpayers ... [which thereby] defeats the constitutional requirement of a concrete and particularized injury").

## 2. Public Importance Standing

 Unlike with constitutional standing, a party is not required to show he has suffered a concrete or particularized injury in order to obtain public importance standing. *S.C. Pub. Interest Found. v. S.C. Transp. Infrastructure Bank*, 403 S.C. 640, 645, 744 S.E.2d 521, 524 (2013). Nor must he "show he has an interest greater than other potential plaintiffs." *Davis v. Richland Cnty. Council*, 372 S.C. 497, 500, 642 S.E.2d 740, 742 (2007). Requiring otherwise would undermine the purpose of public importance standing, which is to "[a]llow[ ] interested citizens a right of action in our judicial system when issues are of significant public importance to ensure[ ] ... accountability and the concomitant integrity of government action." *Sloan v. Greenville Cnty.*, 356 S.C. at 551, 590 S.E.2d at 349. However, as this Court recognized:

> An appropriate balance between the competing policy concerns underlying the issue of standing must be realized. Citizens must be afforded access to the judicial process to address alleged injustices. On the other hand, standing cannot be granted to every individual who has a grievance against a public official. Otherwise, public officials would be subject to numerous lawsuits at the expense of both judicial economy and the freedom from frivolous lawsuits.

*Sloan v. Sanford*, 357 S.C. 431, 434, 593 S.E.2d 470, 472 (2004). Thus, when deciding whether to confer public importance standing, courts must take these competing policy concerns into consideration, and must also determine whether the party presents an issue of public importance and whether future guidance on that issue is needed. *ATC S.*, 380 S.C. at 198-99,

669 S.E.2d at 341. However, as this Court has acknowledged, since many issues may be of public interest, or importance,[5] "[t]he key ... is whether a resolution is needed for future guidance." *Id.* at 199, 669 S.E.2d at 341; *Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 407 S.C. 67, 79-80, 753 S.E.2d 846, 853 (2014) ("Whether [public importance standing] applies in a particular case turns on whether resolution of the dispute is needed for future guidance.... [T]he need for future guidance generally dictates when [public importance standing] applies."). Applying this test to the case at hand, we find Petitioners have established public importance standing.

The issue of whether SCDOT may inspect bridges within private, gated communities is one of public importance as it involves both the conduct of a government entity and the expenditure of public funds. *See Sloan v. Sch. Dist. of Greenville Cnty.*, 342 S.C. 515, 523, 537 S.E.2d 299, 303 (Ct. App. 2000) (recognizing that there is a "public interest involved i[n] the prevention of the unlawful expenditure of money raised by taxation"). A further indicator of the issue's importance is that, as even the dissent recognizes, a decision on the merits of the issue may "have far-reaching ... consequences for the safety of our citizens." Additionally, future guidance is needed since there is no judicial guidance addressing the issue and there is evidence SCDOT will inspect this type of property in the future. When asked during oral argument whether SCDOT would inspect bridges located on private property again, SCDOT replied "Yes, if we have the time." Although a close call, we find the policy concerns that we must balance in determining whether to confer public importance standing weigh in Petitioners' favor given the factors already mentioned and the issue involved implicates both statutory and constitutional provisions. Accordingly, we hold Petitioners have public importance standing. A contrary holding would essentially render a law superfluous if we deem the conduct it prohibits too insignificant to ensure the law is enforced.[6]

---

5. *See ATC S.*, 380 S.C. at 199, 669 S.E.2d at 341 ("Of course zoning is a matter of public importance, but the same may be said of most legislative and executive actions.").

6. We note that this Court has granted Sloan public importance standing in at least six other cases. *See S.C. Pub. Interest Found. v. S.C. Transp.*

**B Whether the controversy falls within an exception to the mootness doctrine.**

Petitioners contend the Court of Appeals erred in concluding this matter is not justiciable because Respondents admitted their conduct was wrongful. We agree.

 A justiciable controversy must be present before any action can be maintained. *Byrd v. Irmo High Sch.*, 321 S.C. 426, 430, 468 S.E.2d 861, 864 (1996). "A justiciable controversy is a real and substantial controversy appropriate for judicial determination, as opposed to a dispute or difference of a contingent, hypothetical or abstract character." *Sloan v. Greenville Cnty.*, 356 S.C. at 546, 590 S.E.2d at 346.

The Court of Appeals' finding hinged on its understanding that SCDOT "conducted its own audit and concluded its own actions were improper." *S.C. Pub. Interest Found.*, 412 S.C. at 24, 770 S.E.2d at 402. In reality, OCIA, a division of the Commission on the Department of Transportation, conducted the audit. While it found that certain SCDOT employees thought the inspection of the bridges was against SCDOT's policy, it stopped short of concluding SCDOT's actions were wrongful. Further, on appeal, Respondents admit that they disagree with the findings in OCIA's report. Instead, they maintain their inspection of the bridges was lawful because their actions served a public purpose and because they be-

---

*Infrastructure Bank*, 403 S.C. 640, 744 S.E.2d 521 (2013) (granting Sloan public importance standing in order to consider whether the statute that governs the composition of the South Carolina Transportation Infrastructure Bank's Board of Directors is constitutional); *Sloan v. Dep't of Transp.*, 379 S.C. 160, 666 S.E.2d 236 (2008) (finding Sloan had public importance standing to challenge SCDOT's alleged misuse of a statutory emergency procurement provision); *Sloan v. Hardee*, 371 S.C. 495, 640 S.E.2d 457 (2007) (applying public importance standing to decide whether certain SCDOT Commissioners were lawfully appointed); *Sloan v. Wilkins*, 362 S.C. 430, 608 S.E.2d 579 (2005) (determining Sloan was entitled to public importance standing to challenge whether an act violated the one subject provision of the South Carolina Constitution); *Sloan v. S.C. Dep't of Transp.*, 365 S.C. 299, 618 S.E.2d 876 (2005) (holding Sloan had public importance standing to dispute the propriety of the procurement procedure SCDOT used to award contracts for certain construction projects); *Sloan v. Sanford*, 357 S.C. 431, 593 S.E.2d 470 (2004) (conferring public importance standing to determine whether the governor may hold a commission in the Air Force Reserve).

lieved they were assisting a municipality. Accordingly, we conclude the Court of Appeals erred in finding Respondents admitted their conduct was improper.

Petitioners also contend the Court of Appeals erred in determining the controversy did not fall within any of the exceptions to the mootness doctrine. We agree.

"A case becomes moot when judgment, if rendered, will have no practical legal effect upon the existing controversy." *Sloan v. Greenville Cnty.*, 380 S.C. 528, 535, 670 S.E.2d 663, 667 (Ct. App. 2009). There are three exceptions to mootness. "First, if the issue raised is capable of repetition but generally will evade review, the appellate court can take jurisdiction." *Sloan v. Greenville Cnty.*, 380 S.C. at 535, 670 S.E.2d at 667. "Second, an appellate court may decide questions of imperative and manifest urgency to establish a rule for future conduct in matters of important public interest." *Curtis v. State*, 345 S.C. 557, 568, 549 S.E.2d 591, 596 (2001). "Finally, if a decision by the trial court may affect future events, or have collateral consequences for the parties, an appeal from that decision is not moot, even though the appellate court cannot give effective relief in the present case." *Id.*

We acknowledge that the controversy that gave rise to this appeal is moot because SCDOT has already inspected the bridges. Thus, any ruling from this Court will have no practical effect on the controversy. Nevertheless, we conclude this controversy should be addressed because it is one which is capable of repetition yet will evade review.

When asserting the controversy falls under this exception, "[t]he party bringing the action need only show the issue raised is *capable* of repetition and is not required to prove there is a 'reasonable expectation' the issue will arise again." *Sloan v. Greenville Cnty.*, 356 S.C. at 554-55, 590 S.E.2d at 351. "However, the action must be one which will truly evade review." *Sloan v. Friends of Hunley, Inc.*, 369 S.C. 20, 27, 630 S.E.2d 474, 478 (2006).

In *Byrd v. Irmo High School*, 321 S.C. 426, 432, 468 S.E.2d 861, 864 (1996), this Court determined short-term student suspensions were capable of repetition, yet will evade review because they "by their very nature, are completed long before

an appellate court can review the issues they implicate." Applying *Byrd* to this case, we conclude the issue of whether Respondents can inspect bridges inside private, gated communities is one that is capable of repetition, yet will generally evade review. Respondents are capable of repeating their actions in the future, especially since they maintain their conduct was lawful. In fact, they said they would inspect private bridges in the future. Moreover, this issue is one which will typically become moot before it can be reviewed. Like student suspensions, the inspection of roadways and bridges can typically be completed long before a court can review the propriety of the action. For example, here, the inspection took only one day to complete. Accordingly, while we find the issue giving rise to this appeal is moot, we find the controversy is capable of repetition yet will generally evade review. In view of our conclusions on the mootness and standing issues, we could remand to the Court of Appeals to consider Petitioners' remaining issues. However, in the interest of judicial economy, we decline to do so and instead proceed with our review. *See Furtick v. S.C. Dep't of Prob., Parole & Pardon Servs.*, 352 S.C. 594, 599, 576 S.E.2d 146, 149 (2003) (addressing the merits of an issue in the interest of judicial economy even though the respondent was entitled to review by the lower court).

## C. Whether SCDOT's inspection was unlawful.

 Petitioners assert Respondents' inspection of the privately owned bridges was unconstitutional because it contravened the constitutional requirement that the expenditure of public funds serve a public purpose.[7] We agree.

---

7. Specifically, Petitioners raised, verbatim, the following issues in their brief:

1. When the Department of Transportation expended public funds to assist a private citizen in his dispute with the developer of a private, gated community, did the courts below err in failing to rule that the expenditure violated the South Carolina Constitution, Article X, Sections 5 and 11?

2. When a private citizen in a dispute with the developer of a private, gated community asked the Department of Transportation for professional engineering assistance, did the courts below err in ruling that the request for assistance came from a municipality?

Article X, section 5 of the South Carolina Constitution provides: "Any tax which shall be levied shall distinctly state the public purpose to which the proceeds of the tax shall be applied." S.C. Const. art. X, § 5. Thus, all taxes levied must be used towards a public purpose. *See Feldman & Co. v. City Council of Charleston*, 23 S.C. 57, 62 (1885) ("Hence it seems to be universally conceded, even by those who are disposed to enlarge the taxing power of the legislature to its greatest extent, that a law authorizing taxation for any other tha[n] a public purpose is void."). "In deciding whether governmental action satisfies a public purpose, we look to the object sought to be accomplished." *Carll v. S.C. Jobs-Econ. Dev. Auth.*, 284 S.C. 438, 443, 327 S.E.2d 331, 334 (1985). "As a general rule a public purpose has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents, *or at least a substantial part thereof.*" *Anderson v. Baehr*, 265 S.C. 153, 162, 217 S.E.2d 43, 47 (1975) (emphasis added).

We find the inspection of the bridges did not serve a public purpose. We do not doubt that the inspection was conducted to assuage safety concerns. However, the owners of the bridges were the beneficiaries of the inspection, not the public at large, whose access to the bridges is limited to the authorization provided by the homeowners. In short, it is not the public's responsibility to pay the maintenance costs of bridges located within a gated community that seeks to exclude the public from enjoying the use of the bridges. Thus, because it did not serve a public purpose, we find the inspection was unconstitutional.

██ Further, even if we did not find SCDOT's actions were unconstitutional, we would nevertheless find the inspection *ultra vires* because it was not performed upon the request of a municipality as required under section 57-3-110(7) of the South Carolina Code, which provides:

The Department of Transportation shall have the following duties and powers:

instruct, assist, and cooperate with the agencies, departments, and bodies politic and legally constituted agencies of the State in street, highway, traffic, and mass transit matters when requested to do so, and, *if requested by such*

*government authorities, supervise or furnish engineering supervision for the construction and improvement of roads and bridges,* provided such duties do not impair the attention to be given the highways in the state highway system.

S.C. Code Ann. § 57-3-110(7) (2006) (emphasis added). In arguing otherwise, Respondents assert Ebner's email established "sufficient color of authority for the State Highway Engineer to believe he was assisting a City under the statutory powers and duties conferred on the Department of Transportation" under section 57-3-110(7). We disagree.

In the email Representative Young sent to Walsh at SCDOT, Young identified Ebner as his constituent, not as a councilman acting for the City of Aiken. Therefore, SCDOT was on notice that the forwarded request was from a private individual, not from the City of Aiken. Although Ebner signed his email "Reggie Ebner, City of Aiken Councilman for District 4," this alone is insufficient to serve as a request from the entity. Our conclusion is also consistent with OCIA's finding that the request to inspect the bridges came from a city councilman, not from the City of Aiken. Consequently, we find Respondents were not acting pursuant to a request from the City of Aiken.

## IV. Conclusion

In conclusion, we find Respondents' conduct was unconstitutional and *ultra vires.* Accordingly, the decision of the Court of Appeals is

**REVERSED.**

HEARN, J., and Acting Justice James E. Moore, concur. KITTREDGE, J., dissenting in a separate opinion in which Acting Justice Costa M. Pleicones, concurs. Acting Justice Costa M. Pleicones, dissenting in a separate opinion in which KITTREDGE, J., concurs.

JUSTICE KITTREDGE:

I join Justice Pleicones in dissent. I write separately to comment on the standing issue, but primarily to express my

fundamental disagreement with the majority's analysis of the merits.

Unquestionably, Petitioners (Sloan) may not be accorded taxpayer standing under our jurisprudence, as set forth by Justice Pleicones. *See, e.g., Crews v. Beattie*, 197 S.C. 32, 49, 14 S.E.2d 351, 357–58 (1941) (recognizing that the generalized interest every taxpayer has in the operation of the government is usually insufficient to confer standing). The public importance exception to the normal standing requirements presents a closer question, but again, I join Justice Pleicones in finding Sloan lacks standing under this doctrine as well. To accord Sloan standing in this case is tantamount to conferring standing on every citizen in every case where improper governmental activity is alleged. That has never been my understanding of the public importance exception, and it was not my intent to allow the exception to swallow the rule when I authored our opinion in *ATC South, Inc. v. Charleston County*, 380 S.C. 191, 669 S.E.2d 337 (2008). *See id.* at 199, 669 S.E.2d at 341 ("The key to the public importance analysis is whether a resolution is needed for future guidance.").

Even assuming Sloan has public interest standing, I respectfully disagree with the majority's analysis and conclusion. I believe today's decision will have far-reaching negative consequences for the safety of our citizens,[8] in that the majority unreasonably constrains the authority and discretion of Respondent South Carolina Department of Transportation (DOT) in the discharge of its constitutional and statutory duty to build and maintain a safe roadway system for the use of the public. *See* S.C. Const. art. XII, § 1 (authorizing the General Assembly to establish agencies to protect the public health, safety, and welfare and to set the limits within which those agencies may operate); S.C. Code Ann. § 57-3-110 (2006) (listing DOT's powers and responsibilities); *see also Leonard v. Talbert*, 222 S.C. 79, 83, 71 S.E.2d 603, 604 (1952) ("Subject to constitutional limitations, the state has *absolute control* of the highways, including streets, within its borders, even though the fee is in the municipality. Such power of *su-*

---

8. The majority references my "far-reaching negative consequences" statement as "[a] further indicator of the issue's importance" justifying Sloan's public importance standing. Not so. My comment is addressed to the impact of what I believe is the Court's clearly erroneous decision today on the merits.

*pervision* and control may be exercised directly by the legislature or may be delegated by it to subordinate or local governmental agencies. . . ." (emphasis added) (citation and internal quotation marks omitted)); *cf. S.C. State Highway Dep't v. Harbin*, 226 S.C. 585, 597–98, 86 S.E.2d 466, 472 (1955) (recognizing that "under its police power [the General Assembly] has full authority in the interest of public safety" to establish both the conditions under which a person may be permitted to operate a motor vehicle and the grounds on which that permit may be revoked).

The majority presents the issue in this case in a myopic and misleading way, essentially asking whether public funds may be spent for a private purpose. Framing the issue in that manner leads to the self-evident conclusion, which is, of course, that public funds may not be spent for a private purpose. However, misstating the question presented to the Court obscures the real issue and attributes to DOT a position it does not assert, as DOT has never contended it may spend "public funds for a private purpose."

The bridges in Woodside Plantation in Aiken are not public and they are not "in the state highway system," [9] but they are located in a road system that is used by the public,[10] as are numerous privately owned bridges and dams throughout the state. When the public, including school buses, regularly travels along a roadway that contains a privately constructed bridge, I am confident the legislature has granted DOT the legal authority to exercise its discretion to provide engineering supervision when requested by the local government.[11] *See* S.C. Code Ann. § 57-3-110(7).

In reaching a contrary conclusion, the majority reads section 57-3-110(7) in isolation, without appreciating the statute's

---

9. S.C. Code Ann. § 57-3-110(7) (authorizing DOT to assist local governments so long as such assistance does not interfere with DOT's obligations to the state highway system).

10. School buses regularly travel the roads within Woodside Plantation, which in 2011 had approximately 4,000 residents (a population that is expected to double to 8,000 residents).

11. The majority also finds fault with the request for assistance from a member of the Aiken City Council. Councilman Reggie Ebner made the request via email to then-Representative Tom Young. Councilman Ebner signed the email "Reggie Ebner, City of Aiken Councilman for

placement within the South Carolina Code. In contrast, I would approach the question of the legislature's intent in section 57-3-110(7) by examining the statute in its proper context. *See, e.g., Sparks v. Palmetto Hardwood, Inc.*, 406 S.C. 124, 128–29, 750 S.E.2d 61, 63 (2013) (noting that courts must construe a statute's words in context so as not to frustrate the purpose of the statutory scheme in which they appear (citations omitted)).

I begin with section 57-3-120, which states, "Highway, street, or road are general terms denoting *a public way for the purpose of vehicular travel,* . . . and the terms shall include roadways, pedestrian facilities, bridges, . . . and all other facilities commonly considered component parts of highways, streets, or roads." S.C. Code Ann. § 57-3-120(1) (2006) (emphasis added) (internal quotation marks omitted). As Woodside Plantation's roads and bridges are utilized by the public, I believe those structures constitute "public way[s] for the purpose of vehicular travel" so as to fall within the legislature's definition of a highway, street, or road. *Id.*

As set forth in section 57-3-110, DOT's "duties and powers" are broad and include the ability to "lay out, build, and maintain public highways and bridges, including the exclusive authority to establish design criteria, construction specifications, and standards required to construct and maintain highways and bridges." *Id.* § 57-3-110(1). Then, subsection (7) makes clear DOT's authority is not limited to state highways, giving DOT discretion to

> instruct, assist, and cooperate with the . . . bodies politic . . . of the State in street, highway, traffic, and mass transit matters when requested to do so, and, if requested by such government authorities, supervise or furnish engineering supervision for the construction and improvement of roads and bridges, provided such duties do not impair the attention to be given the highways in the state highway system.

*Id.* § 57-3-110(7).

I draw three conclusions, important for the resolution of this case, from the language in section 57-3-110(7). First, because

District 4." Representative Young forwarded the request to DOT and referred to the councilman as a constituent. We are told the request lacked "sufficient color of authority." I respectfully disagree.

DOT may only provide engineering support to local governments when doing so does not interfere with DOT's obligations to state highways, DOT's primary responsibility is clearly to the state highway system. *See id.* Second, by giving DOT discretion to assist local governments, subsection (7) necessarily authorizes DOT to provide assistance to local governments for roads and bridges *outside of* the state highway system. *See id.* Third, although subsection (1) limits DOT's power to "lay out, build, and maintain" to *"public* highways and bridges," subsection (7) speaks only of "roads and bridges" generally, indicating the restriction in subsection (1) does not apply when DOT provides assistance under subsection (7). *Id.* § 57-3-110(1), (7) (emphasis added); *see, e.g., State v. Sweat*, 386 S.C. 339, 351, 688 S.E.2d 569, 575 (2010) ("A statute should be so construed that no word ... shall be rendered surplusage. . . ." (citation and internal quotation marks omitted)). The legislature, in my judgment, thus struck a balance between ensuring DOT focused on the state highway system and giving DOT discretion to provide for the safety of roads and bridges outside of that system.

I would therefore construe DOT's authority to "instruct, assist, and cooperate with" local governmental authorities "in street, highway, traffic, and mass transit matters" as embracing the "furnish[ing] [of] engineering supervision for the construction and improvement of roads and bridges." S.C. Code Ann. § 57-3-110(7). Therefore, provided a privately owned bridge is part of "a public way for the purpose of vehicular travel" such that a nexus exists between the bridge and the road system utilized by the public, I would find the legislature has authorized DOT to act within the broad parameters of subsection (7). *Id.* §§ 57-3-110(7), -120(1).

In the instant case, DOT spent a *de minimis* amount of time and money for a manifestly public purpose, the type of conduct expressly permitted by section 57-3-110(7).[12] There-

---

12. One of the flaws in the report of the Office of the Chief Internal Auditor is the implication that DOT acted unlawfully merely because "[t]he bridges [in Woodside Plantation] are neither part of the State highway system nor are they owned or maintained by the City of Aiken." As discussed above, the notion that DOT's authority and assistance may never be offered beyond "the State highway system" is contrary to section 57-3-110(7)'s express terms. Moreover, the City of

fore, in my view, the trial court's decision granting DOT's motion for summary judgment should be affirmed. But a majority of the Court believes otherwise, under the guise that DOT spent "public funds for a private purpose." We are thus left with DOT no longer having either authority or discretion to provide assistance to local governments on matters critical to the safety of the traveling public. The result the Court reaches today is contrary both to law and, most regrettably, to DOT's public safety goals, as defined by the legislature.

I dissent.

ACTING JUSTICE PLEICONES:

I respectfully dissent because in my opinion, the trial judge and the Court of Appeals were correct in finding Sloan lacked standing to bring this action.

In my view, the trial judge properly determined there was no evidence SCDOT has a pattern of, or intends to hereafter provide, the inspection of private property in derogation of state law. The majority correctly points out the public interest exception was created to "ensure accountability and the concomitant integrity of government action," and to provide "future guidance." *See ATC South, Inc. v. Charleston Cnty.*, 380 S.C. 191, 199, 669 S.E.2d 337, 341 (2008); *Sloan v. Greenville Cnty.*, 356 S.C. 531, 551, 590 S.E.2d 338, 349 (Ct. App. 2003); *cf. Sloan v. Dep't of Transp.*, 365 S.C. 299, 308, 618 S.E.2d 876, 881 (2005) (Pleicones, J., dissenting) (quoting *Crews v. Beattie*, 197 S.C. 32, 49, 14 S.E.2d 351, 358 (1941) ("[t]he mere fact that the issue is one of public importance does not confer upon any citizen or taxpayer the right to invoke per se a judicial determination of the issue")); *Baird v. Charleston Cnty.*, 333

---

Aiken clearly has an interest in ensuring the safety and integrity of privately owned bridges along public ways within its corporate limits. *See Vaughan v. Town of Lyman*, 370 S.C. 436, 442, 635 S.E.2d 631, 634 (2006) ("Our Court has long recognized that a municipality has a duty to maintain its streets. (citation omitted)); *Floyd v. Town of Lake City*, 231 S.C. 516, 522, 99 S.E.2d 181, 184 (1957) (discussing a statute allowing an individual to recover from a municipality for "damage[s] [caused] by reason of a defect in any street, causeway, bridge[,] or public way ... within the limits of any city or town" and noting a city's "duty to maintain its streets and other public ways in reasonable repair for the purpose of travel" (citation and internal quotation marks omitted)).

S.C. 519, 530–31, 511 S.E.2d 69, 75 (1999). As demonstrated by the investigation conducted by the Office of the Chief Internal Auditor for the Commission on the Department of Transportation—which addressed issues this inspection posed, and concluded, "Deviations from federal and state regulations must be avoided"—SCDOT has established it maintains proper internal procedures for addressing and remaining accountable for the decisions made within its discretion. Accordingly, in my opinion, Sloan has not established he has standing by way of the public interest exception.

For the same reason, in my opinion, Sloan also lacks taxpayer standing. *See Sloan,* 356 S.C. at 549, 590 S.E.2d at 347 (citing *Beaufort Cnty. v. Trask,* 349 S.C. 522, 529, 563 S.E.2d 660, 664 (Ct. App.2002) ("For a plaintiff to have taxpayer standing, *the party must demonstrate some overriding public purpose or concern* to confer standing to sue on behalf of her fellow taxpayers" (emphasis supplied))); *Crews,* 197 S.C. at 49, 14 S.E.2d at 357–58 ("The general rule is that a taxpayer may not maintain a suit to enjoin the action of State officers when he has no special interest and his only standing is the exceedingly small interest of a general taxpayer.").

Accordingly, I would affirm the Court of Appeals.